**Maria IRAVEDRA, Plaintiff,**

v.

**PUBLIC BUILDING AUTHORITY, et al., Defendants.**

**CIVIL NO. 01–1581 (DRD).**

United States District Court, D. Puerto Rico.

March 8, 2002.

Victor P. Miranda–Corrada, San Juan, PR, for plaintiff.

Roberto A. Fernandez–Quiles, Lespier & Munoz Noya, San Juan, PR, for Public Buildings Authority, defendant.

Jose A. Santiago–Rivera, Dept. of Justice, Fed. Lit. Div., San Juan, PR, for Wilfredo Jirau–Toledo, Commonwealth of Puerto Rico, defendants.

Wilfredo Jirau–Toledo, Bayamon, PR, pro se.

### OPINION AND ORDER

DOMINGUEZ, District Judge.

Defendant, the Commonwealth of Puerto Rico has moved to dismiss this action on the ground that it has never been Plaintiff's legal employer. (Docket No. 12). Thus, the Commonwealth claims there is no legal basis to find it liable for discriminating against Plaintiff. Instead, it alleges that Plaintiff's exclusive, legal employer was the Public Building Authority (PBA), a public corporation created by law. The threshold issue before the Court is, thus, whether a public corporation such as the PBA has sufficient legal identity and distinction, vis-a-vis the Commonwealth government, so as to be exclusively liable to be sued in this case. After careful examination of the PBA's enabling law, and pursuant to FED.R.CIV.P. 12(b)(6), the Court **GRANTS** the Commonwealth's motion to dismiss. (Docket No. 12).

**I**

### MOTION TO DISMISS STANDARD

In ruling on a motion to dismiss, a court must accept as true all the factual allegations in the complaint and construe all reasonable inferences in favor of the plaintiffs. *Alternative Energy, Inc. v. St. Paul Fire and Marine Insurance Company,* 267 F.3d 30, 33 (1st Cir.2001); *Doyle,* 103

F.3d at 190. Dismissal under FED. R. CIV. PROC. 12(b)(6) is appropriate only if the facts alleged by the plaintiff, taken as true, do not justify recovery. *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir.1996). Therefore, in order to survive a motion to dismiss, plaintiff must set forth "factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery." *Gooley v. Mobil Oil Corp.*, 851 F.2d 513 (1st Cir.1988).

However, the Court is not obligated to accept plaintiff's "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like." *Aulson*, 83 F.3d at 3. The Court must accept only those facts that are "well pleaded," limiting its inquiry into the allegations of the complaint. *Litton Indus., Inc. v. Colon*, 587 F.2d 70, 74 (1st Cir.1978). In sum, the Court's focus should always be on "whether a liberal reading of [the complaint] can reasonably admit of a claim...." *Id.; see also Rogan v. Menino*, 175 F.3d 75 (1st Cir.1999).

## II

## FACTS

A Cuban immigrant, Plaintiff became a naturalized U.S. citizen in 1978. Her career in the public sector began in 1987. In 1998, she was appointed to be the PBA's Human Resources Director. Pursuant to the facts alleged in the complaint, Plaintiff was terminated on September 29, 1999, due to reasons exclusively related to her national origin and gender, all in violation of 42 U.S.C. § 1983. Plaintiff, a female employee, also claims to have been a victim of sexual harassment, under Title VII, 42 U.S.C. § 2000e and several local statutes. Her dismissal, pursuant to the complaint, was retaliatory in nature "because she rejected [her boss'] sexual advances and because of her natural origin." She has sued both the PBA **and** the Commonwealth of Puerto Rico.

More specifically, the complaint states *inter alia:* (1) that the PBS "does not enjoy the immunity provided by the Eleventh Amendment of the Constitution"; (2) that the PBS is a "person" under § 1983; (3) that the PBA is an "employer" under Title VII; and (4) that the PBA was Plaintiff's employer. Moreover, she also alleges that (5) the Commonwealth is an "employer" under Title VII; (6) that the Commonwealth was also her legal employer; and that (7) the Commonwealth is not immune from suit under the Eleventh Amendment.[1] In other words, the complaint states that, both, the PBA and the Commonwealth were at all times her employer, and that Title VII specifically forecloses any Eleventh–Amendment immunity favoring her employers.

It is undisputable that Plaintiff was an employee of the PBA. But in her complaint—as stressed prior hereto—Plaintiff has not only named the PBA as a defendant, but also the Commonwealth. The Court notes that Plaintiff's standing to bring suit against the PBA is not at issue at this moment. However, it is contended that Plaintiff lacks standing to bring suit against the Commonwealth, on the basis that the Commonwealth has never been Plaintiff's employer. The Commonwealth alleges in its motion to dismiss that, pursuant to the organic act that created the PBA, it is impossible to conclude that this public corporation is an alter ego of the Commonwealth. Rather, it contends that, although the PBA is public corporation, it is nonetheless a separate and distinct legal entity. The Commonwealth thus requests from the Court to find that the PBA was Plaintiff's exclusive legal employer, and,

---

1. Regarding the Eleventh Amendment issue vis-a-vis Plaintiff's claims under the Civil Rights Act, 42 U.S.C. § 1983 et seq., see note 3, *infra*.

accordingly, dismiss all claims against the Commonwealth.

Therefore, **the central inquiry in this case is whether the PBA is an alter ego of the Commonwealth.** If the PBA is an alter ego of the Commonwealth, then the Court cannot grant the latter's motion to dismiss. Conversely, if the PBA is not the Commonwealth's alter ego, but a separate and independent entity, then the Court must conclude that the PBA was Plaintiff's employer, and all claims against the Commonwealth shall be dismissed for lack of standing.

## III

## THE PBA IS NOT AN ALTER EGO OF THE COMMONWEALTH

■ The Court must begin by underscoring that, in many ways, this case is one of first impression. There is ample case law discussing the issue of whether public corporations are alter egos of the states that created them, but in the context of Eleventh Amendment immunity and diversity jurisdiction. *Illinois v. City of Milwaukee*, 406 U.S. 91, 97, 92 S.Ct. 1385, 1389, 31 L.Ed.2d 712 (1972); *Kovats v. Rutgers*, 822 F.2d 1303, 1303 (3rd Cir.

2. The vast majority of cases herein cited are related to public post-secondary educational institutions, incorporated and unincorporated alike, regarding diversity and immunity issues. But whether in the diversity or the immunity context, the analysis should always center on the State-related agency's enduring legal identity as a juridical entity separate from the State. Furthermore, the criteria used in every context is practically identical, because either way they present the same ultimate question-to wit, who is the real party in interest.

3. If the Court were to determine that the Commonwealth of Puerto Rico is the real party in interest in this case, the Eleventh Amendment of the Constitution would bar Plaintiffs claims against it under the Civil Rights Act, 42 U.S.C. § 1983 *et seq*. *Metcalf*

1987); *Kashani v. Purdue Univ.*, 813 F.2d 843, 845 (7th Cir.), *cert. denied*, 484 U.S. 846, 108 S.Ct. 141, 98 L.Ed.2d 97 (1987); *Hall v. Medical College of Ohio*, 742 F.2d 299, 302 (6th Cir.1984), *cert. denied*, 469 U.S. 1113, 105 S.Ct. 796, 83 L.Ed.2d 789 (1985); *United Carolina Bank v. Board of Regents*, 665 F.2d 553, 557 (5th Cir.1982); *Soni v. Board of Trustees of University of Tennessee*, 513 F.2d 347, 352 (6th Cir. 1975), *cert. denied*, 426 U.S. 919, 96 S.Ct. 2623, 49 L.Ed.2d 372 (1976); *University Sys. of New Hampshire v. United States Gypsum*, 756 F.Supp. 640, 645 (D.N.H. 1991).[2] The Court has examined them and notes that, unlike here, in those cases, the states were never formally designated as parties to the case. Only the public corporations of those states were named as parties.

The instant case is somewhat different, however, in that Plaintiff has sued not only the public corporation, **but also the state, or, as in this case, the Commonwealth of Puerto Rico.**[3] Moreover, unlike those cases, the principal issue here is not whether Eleventh Amendment immunity applies, or whether diversity jurisdiction exists, but whether the Commonwealth of Puerto Rico was Plaintiff's legal employer,

*& Eddy, Inc. v. Puerto Rico Aqueduct & Sewer Authority*, 991 F.2d 935, 938 n. 2 (1st Cir. 1993); *De Leon Lopez v. Corporacion Insular de Seguros*, 931 F.2d 116, 121 (1st Cir.1991)(collecting cases); *Fred v. Aponte Roque*, 916 F.2d 37, 38 (1st Cir.1990); *Paul N. Howard Co. v. PRASA*, 744 F.2d 880, 886 (1st Cir.1984), *cert. denied*, 469 U.S. 1191, 105 S.Ct. 965, 83 L.Ed.2d 970 (1985); *Ramirez v. Puerto Rico Fire Serv.*, 715 F.2d 694, 697 (1st Cir.1983). There are, however, issues pertaining to the abrogation of 11th Amendment immunity as to the Title VII claims, 42 U.S.C. § 2000e et seq. *See Board of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001). Nevertheless, these issues have become moot since the Court finds that all claims against the Commonwealth shall be dismissed on the grounds that Plaintiff lacks standing to bring suit against it.

and thus, whether it should have been designated as a party in this case. Notwithstanding, the ultimate question for decision both here and in those cases is whether a public corporation is a mere alter ego of the "state." And the criteria for determining that issue, regardless of its effect, are substantially the same.

Therefore, the Court will borrow the tests applied in Eleventh Amendment immunity and diversity jurisdiction cases, so as to apply it to the instant case. Thus, the court looks to those cases for guidance. Specifically, the Court has found *University of Rhode Island v. A.W. Chesterton Company*, 2 F.3d 1200 (1st Cir.1993) to be instructive.

As the First Circuit stated in *University of Rhode Island*, most **unincorporated** state agencies and departments are readily recognizable as mere "arms" or "alter egos" of the states that created them. But when dealing with formally incorporated State-related entities, the inquiry becomes more intricate because the State's formal incorporation of a department is not necessarily dispositive on the issue of its autonomy. Like their private counterparts, state-created corporations are never monolithic. Therefore, it is generally unsafe to jump to "conclusory" determinations as to the entity's legal character, because often these types of entity possess unique characteristics. *Moor v. County of Alameda*, 411 U.S. 693, 721 n. 54, 93 S.Ct. 1785, 1801 n. 54, 36 L.Ed.2d 596 (1973); *cf. Metcalf & Eddy, Inc. v. Puerto Rico Aqueduct & Sewer Auth.*, 991 F.2d 935, 939 (1st Cir. 1993)("an essentially functional inquiry, not easily amenable to bright-line answers or mechanical solutions")(emphasis added); *see also In re San Juan Dupont Plaza Hotel Fire Litigation*, 888 F.2d 940, 942 (1st Cir.1989)(applying factors relevant to the inquiry of whether a state-created Tourism Company is an "arm of the state," entitled to Eleventh Amendment protec-

tion); *Ainsworth Aristocrat Intern. Pty. v. Tourism Co.*, 818 F.2d 1034, 1038 (1st Cir.1987)(same).

In order to determine the precise nature of a public corporation, the Court has to examine the PBA's organic act. *University of Rhode Island*, 2 F.3d at 1204; *see also Moor*, 411 U.S. at 719, 93 S.Ct. at 1800 (undertaking "a detailed examination of the relevant provisions of California law" in order to rule out Alameda County's "mere agency"). Accordingly, the Court begins by focusing on the laws of the Commonwealth of Puerto Rico. The PBA's organic act defines the status and nature of the agency and its relation to the sovereign, the Commonwealth.

Albeit in the immunity and diversity context, the First Circuit has propounded a list of factors—by no means exhaustive—to be weighed in making the "arm" or "alter ego" determination: to wit, (1) whether the agency is performing an "essential" or "traditional" governmental or proprietary function, as opposed to a nonessential or merely proprietary one; (2) whether it has been separately incorporated or has the status of a separate "public corporation"; (3) whether it enjoys meaningful access to, and control over, funds not appropriated from the State treasury; (4) whether it has the power to sue and be sued and to enter into contracts in its own name; (5) whether its property is immune from state taxation; (6) whether the sovereign has immunized itself from responsibility for the agency's operations—that is, whether, in the event plaintiff prevails, the payment of the judgment will have to be made out of the state treasury; and (7) whether the entity exercises substantial autonomy over its internal operations. *University of Rhode Island*, 2 F.3d at 1204; *Metcalf & Eddy*, 991 F.2d at 939–43. These factors "are designed to disclose the extent to which state law endows the in-

corporated State-created entity with the operational authority, discretion, and proprietary resources with which to function independently of the State." *University of Rhode Island*, 2 F.3d at 1205; *cf. Metcalf & Eddy*, 991 F.2d at 940 ("The more tightly the agency and the state are entangled, the more probable it becomes that the agency shares the state's Eleventh Amendment immunity").

## IV

## APPLYING THE TEST

■ It is critical to our inquiry to note that whether a corporation is not an "alter ego" of the State is a matter of federal, not state, law. *University of Rhode Island*, 2 F.3d 1200, 1205, n. 8 ("[t]he real party in interest analysis is ultimately a matter of *federal* law"); *Metcalf*, 991 F.2d at 942 ("Whether an agency is an arm of the state *vel non* is a matter of federal, not local, law"). Applying these factors equally, the Court will now analyze the PBA's enabling statute to ascertain how, if at all, there is interrelation with the Commonwealth.

1. *The PBA performs an "essential" or "traditional" governmental or proprietary function.*

The court must first ascertain whether the PBA is performing an "essential" or "traditional" governmental or proprietary function, as opposed to a nonessential or merely proprietary one. The PBA was created by Law No. 56 of June 19, 1958, 22 P.R. Stat Ann., § 901 *et seq.*, with the purpose of creating a corporate franchise in charge of making and preparing plans and designs of buildings and any other physical facilities related with governmental services; it is also responsible for leasing or otherwise entering into contracts generally with the Commonwealth of Puer-

to Rico its departments, and its municipalities, for the use of lodging space in such public facilities. *See id.* § 903. Also, the Secretary of Education may request that the PBA design or construct buildings to be used, for example, as schools, using funds transferred to it by said Secretary. *Id.*[4] Undoubtedly, these are essential governmental functions.

Moreover, the PBA's organic act states that it shall constitute "an instrumentality of the Commonwealth of Puerto Rico, exercising public and **essential** functions of the Government...." *See id.* § 902 (emphasis added). Moreover, the statute specifically provides that "the execution of the powers conferred by §§ 901–917 of this title, by the Authority, **shall be deemed as an essential function of the Government of the Commonwealth of Puerto Rico.**" *Id.* (emphasis added). Hence, the PBA's performs an essential governmental function. Clearly, when creating the PBA, Puerto Rico's legislature was careful, not only in defining its duties, but also in describing the particular nature of its duties: to wit, it described them as an exercise of a "public" and "essential" function of the Government. The statutory language leaves no room for speculation. The PBA exercises public functions that are essential to the Commonwealth of Puerto Rico. Therefore, this factor weighs in favor of the conclusion that the PBA is an "alter ego" of the Commonwealth.

2. *The PBA has the status of a separate "public corporation."*

The next factor is easily determined; to wit, whether the PBA has been separately incorporated, that is, whether it has the status of a separate "public corporation." The PBA's statute of incorporation specifi-

---

4. Furthermore, the PBA is authorized to implement projects for modernization and reconstruction of public housing in agreement with the Public Housing Administration. 1991 Op. Sec. Jus. No. 39.

cally provides that it is "[a] body corporate and politic with corporate franchise." *Id.*, § 902. Furthermore, § 906 provides that the PBA shall have "perpetual existence as a corporation." Thus, it is clear that the PBA has the status of a separate "public corporation." Plaintiff recognizes this characteristic. (Docket No. 1). This factor, hence, weighs towards concluding that the PBA is not the Commonwealth's "alter ego." [5]

*3. The PBA enjoys meaningful access to, and control over, funds not appropriated from the Commowealth's treasury.*

The Court now examines whether the PBA enjoys meaningful access to, and control over, funds not appropriated from the Commonwealth of Puerto Rico's treasury. Section 906 of the law prescribes that the PBA shall, *inter alia,* "borrow money, make and issue bonds of the [PBA] for any of its corporate purposes and to secure payment of its bonds and of any and all other obligations by pledge on all or any of its properties, revenues and incomes." *Id.*, § 906(10). Moreover, the PBA is authorized to make and issue bonds for the purpose of funding, refunding, purchasing, paying, or discharging any of its outstanding or issued bonds or obligations, § 906(11); accept or obtain contributions, loans, grants, mortgage insurances or of other kind, securities, contracts, leases or other transactions to fulfill any of its duties, § 906(12); sell or otherwise dispose of property of any kind, real, personal or mixed, or any interest therein, pursuant to the terms and conditions that the PBA may determine upon the previous approval

of the Board of Directors, § 906(13). Lastly, the PBA has power

[t]o do all acts, or covenants, agreements, contracts or transactions necessary or convenient to carry out the powers granted to it hereby or by any other act of the Legislature of Puerto Rico, or by an act of the Congress of the United States; Provided, however, That the [PBA] shall have no power at any time or in any manner to pledge the credit or taxing power of the Commonwealth of Puerto Rico or any of its political subdivisions; neither shall the Commonwealth of Puerto Rico nor any of its political subdivisions be liable for the payment of the principal of or interest on any bonds issued by the Authority.

*Id.* § 906(16).

Further, Plaintiff admits in the complaint that the PBA "may issue bonds without obligating the credit or taxing power of Puerto Rico." (Docket No. 1). Therefore, clearly the PBA enjoys meaningful access to monies that are not appropriated from the State treasury. This factor tilts the scale significantly in favor of concluding that the PBA does not possess "alter ego" status. *See generally Metcalf & Eddy,* 991 F.2d at 942 (in immunity context, "[t]he power and opportunity to generate a revenue stream and thereby finance an agency's operations is an important attribute of the agency's separate identity").

*4. The PBA has the power to sue and be sued and to enter into contracts in its own name.*

Another enumerated factor is whether the PBA has the power to sue and be sued

---

**5.** Nevertheless, the Court is mindful that this factor alone may not necessarily be dispositive of the issue at hand. *See e.g. Kashani,* 813 F.2d at 847 (holding that entity's formal designation as "separate" from State for some purposes is inconclusive of autonomy);

*Krieger v. Trane Co.,* 765 F.Supp. 756, 759 (D.D.C.1991) (finding term "independent agency" inconclusive evidence of autonomy). It is only meaningful in light of the PBA's other attributes.

and to enter into contracts in its own name. Again, the Court examines the enabling statute,[6] and finds that the PBA has legal standing to sue and be sued, complain and defend in all courts of justice and administrative bodies in its own name. *Id.,* § 906(4). Furthermore, the PBA also has power "to make contracts and to execute all instruments necessary or convenient for the exercise of any of its powers." *Id.* § 906(5). Moreover, Plaintiff admits in her claim that the PBA has the capacity to sue and be sued. (Docket No. 1). Therefore, it is undisputable that the PBA has the power to sue and be sued and to enter into contracts in its own name. Thus, this is yet another factor that weighs against Plaintiff's assertion that this public corporation is a mere "alter ego" of the Commonwealth.

5. *The PBA's property is immune from state taxation.*

The fifth factor the Court analyzes is whether the PBA's property is immune from state taxation. Again, an analysis of the PBA's enabling statute is determinative. Section 909 of the law specifically exempts the PBA from taxation:

> In order to facilitate the obtaining of funds for enabling the Authority to carry out its corporate purposes, the real and other properties of and the bonds issued by the Authority and the revenues derived therefrom shall at all times be and remain tax exempt. The Authority shall be, in like manner, exempt from the payment of taxes on revenues derived from its properties, enterprises or any other activity, as well as the excise tax on its property introduced into Puerto Rico or acquired by it in any manner.

*Id.*

Tax exemption may tend to prove lack of autonomy because it would demonstrate an entity shares state-like immunity. *Kovats,* 822 F.2d at 1311. Nonetheless, the fact that a public corporation is exempt from state taxation has often been considered a "minimally probative" factor. *University of Rhode Island,* 2 F.3d at 1209. The Court finds in the instant case that, although somewhat meaningful, this factor is not heavily weighed in the final analysis of PBA's relation to the Commonwealth. Henceforth, notwithstanding that PBA's immunity from state taxation may tend to prove "alter ego" status, the Court will regard this factor as of minor probative value, particularly when all the other factors are integrally considered.

6. *The Commonwealth has immunized itself from responsibility for the State-created entity's operations.*

This criteria requires the Court to make a determination as to the source of the funds to pay a judgment favorable to Plaintiff. In other words, the Court must determine whether the payment of the judgment will have to be made out of the Commonwealth's or the PBA's treasury. The Court is cognizant that the instant argument is somewhat circular in nature. Nonetheless, the answer to this question is undoubtedly significant to the Court in its final analysis. After examining the PBA's enabling statute, the Court finds that the source of the funds to pay an judgment favorable to Plaintiff will undoubtedly come from the PBA's treasury, not the Commonwealth's.

As Plaintiff readily accepts in her complaint, the PBA has the capacity to sue and be sued in its own name. (Docket No. 1). It is only logical that the PBA's legal capacity to be sued brings forth with it also the corresponding responsibility of paying any judgment that may be entered

---

**6.** Rule 17(b) of the Federal Rules of Civil Procedure states: "The capacity of a corpora- tion to sue or be sued shall be determined by the law under which it was organized."

against it. It would be erroneous to assume that the Commonwealth did not intend to impose upon the PBA said responsibility while at the same time it granted it the capacity to sue and be sued. The Commonwealth could not have intended to provide the PBA with judicial standing, yet relieve it from liability if judgment eventually ensued. The rationale is simple:

> Every statute limiting liability defines, at least in part, one's capacity to be sued, and every statute limiting one's capacity to be sued also limits liability. Indeed, the surest way to limit one's liability is to take away his capacity to be sued. One cannot be held legally responsible for his acts if that responsibility cannot be enforced.

*United States v. Sharon Steel Corporation*, 681 F.Supp. 1492, 1497 (D.Utah 1987).

Hence, if the Commonwealth wishes to limit the PBA's liability, it need only to take away its capacity to be sued. Since it has not, the Court finds that the PBA alone shall be held liable to pay a judgment favorable to Plaintiff. This conclusion strengthens the theory that the PBA is not the Commonwealth's "alter ego," but a separate and independent legal entity.

Notwithstanding, there is further statutory language denying that the PBA is the Commonwealth's "alter ego." To wit, the PBA's enabling statute provides that, although all of its funds must be "deposited with recognized depositories for Commonwealth funds," they shall, however, "be kept in a **separate account** or accounts **registered in the name of the [PBA]**." 22 P.R. Stat. Ann., § 914 (emphasis added). If the PBA were a mere arm of the Commonwealth, clearly there would be no need to keep its funds in a separate account, nor to register said funds in its name. The Court, therefore, finds that this statutory requirement erodes Plaintiff's "alter ego" theory.

Accordingly, the Court finds that the Commonwealth has immunized itself from responsibility for the PBA's operations. This factor, hence, weighs heavily against Plaintiff's assertion that the PBA is a mere "alter ego" of the Commonwealth.

### 7. The PBA exercises substantial autonomy over its internal operations.

The Court has finally reached the pinnacle of its inquiry. The most important element of this analysis is probably whether the PBA exercises "substantial autonomy" over its internal operations. Accordingly, the Court must review the particular powers with which the PBA is endowed under its statute of incorporation.

As stated before, the PBA has the status of a separate "public corporation" which, as with most State-create entities, is charged with performing an "essential" or "traditional" governmental or proprietary function. And like most State-created entities, the PBA's operations are financed in part by the Commonwealth's appropriations, approved annually by the general assembly. Likewise, it is clear that the PBA has the power to sue and be sued and to enter into contracts in its own name, and that it shall pay a judgment favorable to Plaintiff, both of which are pivotal factors that point to its fiscal and operational autonomy. But as stated before, what is important for purposes of this inquiry, is that the PBA enjoys "meaningful access" to, and control over, funds **not** appropriated from the Commonwealth of Puerto Rico's treasury.

The PBA's enabling law provides that it shall be governed by a Board of Governors, composed of seven (7) members, six of which are directly appointed by the Governor of Puerto Rico with the advice and consent of the Senate. The other member is the Secretary of Transportation and Public Works, which, of course, is also

appointed by the Governor. Plaintiff **seems to be suggesting** that because the members are political appointees of the Commonwealth, the Board and the Commonwealth are closely entangled. Although this is an enticing argument, close scrutiny leads to the opposite conclusion.

It is correct, as Plaintiff points out in her memorandum, that the members of the PBA's Board of Governors are appointed by the Governor or Puerto Rico. But aside from the power of appointment, the Governor has no direct voice in the Board's decisionmaking. *Cf., e.g., University of Rhode,* 2 F.3d at 1208; *Fitchik v. New Jersey Transit Rail Operations, Inc.,* 873 F.2d 655, 663 (3rd Cir.1989) (finding entity not "alter ego," despite gubernatorial veto power), *cert. denied,* 493 U.S. 850, 110 S.Ct. 148, 107 L.Ed.2d 107 (1989).

The First Circuit in *University of Rhode Island,* noted that "[t]he power of appointment (and reappointment) is significant, and may entail risks of subtle or indirect manipulation of the entity's decisionmaking processes by elected officials." 2 F.3d at 1207. That Court, nonetheless, found that, while "individual Board members might be vulnerable to pressure, the Board as a whole is insulated to some degree from sudden 'reversal[s] of policy' by *fixed* " terms they hold in office. *Id.* at 1208. Furthermore, the Court found that the Board members in that case were sufficiently and significantly insulated from partisan or personal pressures because "no Board member [could] be removed except *for cause* . . . ." *Id.*

In the case at bar, the PBA's board members are appointed by the Governor to a fixed term of five (5) years—a term longer than the term of election of the Governor—and they hold their office until their successor is appointed and qualifies. 22 P.R. LAWS ANN., § 904. But more importantly, unlike the Board members in *University of Rhode Island,* the PBA's enabling statute is completely silent on this matter. After carefully examining the statute, the Court finds that it bereft from any provision addressing the issue of removal of the PBA's Board members.[7] Thus, it seems that the PBA's Board members are even more insulated from partisan or personal pressures than those in *University of Rhode Island.*

Moreover, the fact that the PBA's Board members are appointed by the Governor should not come as a surprise. It is expected that a public corporation have some connection with and control from the general government. Thus, this factor alone cannot defeat the clear intention of the law to create a distinct and separate entity from the Commonwealth.

Plaintiff further argues that the PBA's employees are subject to the Commonwealth of Puerto Rico's Personnel Law. Plaintiff **seems to be suggesting** that, thus, the PBA's employees should be considered legal employees of the Commonwealth. Plaintiff, however, is misreading the law. First of all, the PBA's enabling statute states as follows:

The personnel of the [PBA] shall be included in the **exempt** service, pursuant to the provisions of Act. No. 345, of May 12, 1947, known as the Personnel Act, as amended. For the administration of said personnel the [PBA] shall, in consultation with the Director of the Office of Personnel, **prescribe standards and regulations** leading toward a plan anal-

---

**7.** However, the seventh mandatory member of the PBA's Board of Governors, who is the Secretary of Transportation and Public Works, *see* § 904, shall be removed indirectly. Since the Secretary is a political appointee of the Governor, he or she may be removed from office at any moment and for whatever reason the Governor deems proper. Such action would entail, therefore, an indirect removal from the PBA's board of Governors.

**ogous** to the one in force for the Commonwealth employees under the personnel laws of Puerto Rico, insofar as deemed by the [PBA] compatible with its best interests.

22 P.R. STAT. ANN., § 911 (emphasis added). One cannot logically infer from § 911 that the PBA's employees are covered by the Commonwealth's personnel laws. Indeed, the statute clearly provides the opposite, namely, that **because the PBA is exempt** from its application, the PBA shall therefore issue **its own personnel regulations,** which shall be **analogous** to Puerto Rico's personnel laws. This conclusion is further buttressed by an advisory opinion issued by the Commonwealth's Secretary of Justice (Puerto Rico's Attorney General) which interpreted § 911, in 1971. To wit, the Secretary's advisory opinion specifically recognized that the PBA's employees **were not** subject to the Puerto Rico's personnel laws—that is, they were not subject to the Act No. 345 (hereinafter "Act No. 345"), cited in § 911. *See* 9 Op. Sec. Jus. (1971).

The Court must note, moreover, that Act No. 345, which established, among other things, the Office of Personnel and the "exempt service," mentioned in § 909, was later repealed by Act No. 5, approved October 14, 1975, 3 P.R. STAT. ANN., § 1301 *et seq.* (hereinafter, "Act. No. 5" or "the new Public Service Personnel Law"). Thus, Act No. 5 is the new Public Service Personnel Law currently in force. Section 10.6 of Act No. 5 specifically provides exceptions to its applicability, stating that it shall **not** apply to "[e]mployees of government agencies or **instrumentalities operating as private enterprises or businesses,**" nor to "[e]mployees of government agencies or **instrumentalities entitled to bargain collectively** through special laws." 3 P.R. STAT. ANN., § 1338(3) & (4). Notwithstanding that Act No. 5 (instead of Act. No. 345) is now in force, the Court finds that the PBA

nevertheless falls under the statutory exceptions provided in § 10.6, cited above. The Court explains.

The Supreme Court of Puerto Rico has found that, from the infinite variety of public corporations that exist, there are three particular types that can be distinguished, to wit: 1) the Government departments or agencies; 2) **the public corporations properly established by statute;** and 3) the joint stock companies controlled in whole or in part by the Government, and which are established under the laws that govern private corporations. *Torres Ponce v. Jimenez,* 113 P.R. Offic. Trans. 77, 84, 1982 WL 210593 (1982). The Defendants in *Torres Ponce* were arguing that the Puerto Rico Telephone Co. (hereinafter "PRTC") was not a public, but a private, corporation, mainly because it had been established under the Delaware Corporation Law, as many private corporations are. The Court rejected their argument holding that, notwithstanding it had been incorporated in Delaware as a private corporation, that was insufficient reason "for denying the fact that it is a public-private corporation," under the third category of public corporations listed above. 113 P.R. Offic. Trans. at 87, 1982 WL 210593. It further emphasized that "the Telephone Authority, a public corporation of the Commonwealth of Puerto Rico, own[ed] 100% of its shares." *Id.*

The Court also rejected what in that case seemed to be Defendants most forceful argument. Defendants pointed to the PRTC's organic act, which specifically provided that "nothing in this chapter shall be construed as to grant to the to the [PRTC] or any company whose stock is acquired by the Authority, the status of a public corporation of the Commonwealth of Puerto Rico." *Id.* at 89, 1982 WL 210593. Notwithstanding its organic act, the Court reviewed and restated reasons that explain

why states establish "public-private corporations," together with the benefits they derive therefrom, while citing extensively the Legislative committee's reports on the PRTC, and concluded the following:

> The lawmaker's intent is clear. The [PRTC] was acquired to be part of the public corporations system which would give telephone service. It would operate as the type of public corporation organized under the laws of private corporations, to operate as a private corporation for the reasons already mentioned. Hence, the company will be considered a public or a private corporation, for certain legal purposes, depending on the particular case.

*Id.* at 91, 1982 WL 210593.

Clearly, the Court in *Torres Ponce* held that the PRTC was a public corporation. As such, the PRTC would be considered a "public corporation" for certain legal purposes, but a "private corporation" for others. Thus, the PRTC's employees would be generally considered "public employees," but to which the Commonwealth's personnel laws were not specifically applicable. The Court held, however, that public corporations that function akin to private enterprises would be nonetheless bound by the "merit principle" subjacent in said personnel laws.[8]

This Court finds that the holding of *Torres Ponce* is applicable to the case at bar. Indeed, the Supreme Court of Puerto Rico has recognized that the PBA practically operates like a "private enterprise," which does not receive significant direct governmental funding, that is, it is a corporation that functions by generating its own monies. *Rodriguez Torres v. Autoridad de Edificios Publicos,* 141 D.P.R. 362, 369 (1996), 1996 WL 499338.[9] As such, the Court finds that, even thought the PBA's employee's are to be considered employee's of the Commonwealth for some purposes, their status does not carry with it the automatic application of the Commonwealth's personnel laws. Only the merit principle is automatically applicable to this and other public corporations.

This conclusion is clearly buttressed by the PBA's enabling statute, since it provides for the PBA's obligation to prescribe standards and regulations that merely lead "to a plan **analogous** to the one in force for the Commonwealth employees under the personnel laws of Puerto Rico, insofar as deemed by the [PBA] compatible with its best interests." 22 P.R. STAT. ANN., § 911. Therefore, Plaintiff is clearly misreading the law.

Furthermore, the Court simply cannot underscore enough the principle that public corporations are *sui generis* entities

---

8. The Court held that "[t]he **clear intent of the law it to extend the merit principle to the greatest possible number of public employees.**" *Id.* at 93, 1982 WL 210593 (emphasis added).

9. Moreover, it is important to note that, similarly to any private enterprise, the PBA's employees are entitled to organizing and unionizing themselves, and as such they are entitled to bargain collectively with their employer, the PBA. Indeed, Puerto Rico's Labor Relations Act, which defines the term "employer," excludes the Government and its political subdivisions from said definition, but **does not exclude from said definition Puerto Rico's**

"**public corporations.**" Op. Sec. Just. 7 (1993)(P.R.'s Att'y General's advisory opinion number 7 (1993))(our translation). Once collective bargaining attaches, the merit principle applies, but not the entire body of the Commonwealth's personnel laws. The Court further takes judicial notice of cases regarding the PBA's union that have reached the Supreme Court of Puerto Rico on appeal. *See e.g. Union Independiente de Empleados de la Autoridad de Edificios Publicos (UIEAEP) v. Autoridad de Edificios Publicos,* 146 D.P.R. 611 (1998), 1998 WL 847622; *Autoridad de Edificios Publicos v. UIEAEP,* 130 D.P.R. 983 (1992), 1992 WL 755584.

created by law. They are part or the Executive Branch of government; but at the same time, they are separate corporate entities. As separate entities created by law, their powers cannot exceed beyond those of the state that created them. After all, states create them for a public purpose. Hence, it is expected to find in their statutes of incorporation elements akin to government, such as the regulation of personnel. However, by no means do these elements automatically convert a public corporation such as the PBA into alter ego's of the State's that created them. Therefore, for the reasons stated above, Plaintiff's argument—*i.e.,* that the PBA's employees are employees of the Commonwealth to which the local personnel laws apply—is dismissed.

In sum, the powers of the PBA are all designed to bestow the administrative and fiscal independence that characterizes such corporate entities. The PBA has **"complete control and supervision over each and every one of its properties and activities, including the power to determine the nature and necessity of all expenses and the manner of incurring, authorizing and paying same."** 22 P.R. STAT. ANN., § 906(3) (emphasis added). Furthermore, the PBA has the power to prescribe, adopt, amend and repeal its own rules and regulations for the conduct of its business in general, and to exercise and perform the powers and duties granted to it and imposed on it by law. *Id.* In addition, the PBA can enter into contracts in its own name; it can execute all instruments necessary or convenient to it, § 906(5); the PBA can acquire any kind of property and rights thereon, in any lawful manner, necessary or convenient to carry out the purposes of the Authority, § 906(6) & § 906(8); the PBA prepares or causes to be prepared, plans, projects and cost estimates for the construction, reconstruction, extension, improvements, enlargement or repair of any property or under-

taking, § 906(7); the PBA may appoint such officers, agents and employees and vest them with such powers and impose on them such duties, and to fix, change and pay such compensation for their services, as it may determine, § 906(9).

Also, as stated before, the PBA may issue bonds for the purpose of funding, purchasing, or paying its liabilities, borrow money, sell and dispose of property, as any other private corporation would.

Clearly then, the PBA exercises substantial autonomy over its internal operations. This factor supports the conclusion that the PBA is not an "alter ego" of the Commonwealth. Therefore, the Court finds that it has sufficient legal identity and distinction, vis-a-vis the Commonwealth government, so as to be exclusively liable to be sued in this case.

## V

## STANDING

In order to satisfy the Constitution's standing requirements, a plaintiff must show (1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) **the injury is fairly traceable to the challenged action of the defendant;** and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *See Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.,* 528 U.S. 167, 180–81, 120 S.Ct. 693, 704, 145 L.Ed.2d 610 (2000); *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).

In the instant case, the PBA Plaintiff lacks standing against the Commonwealth inasmuch as the injury she claims to have suffered—her termination—cannot be fairly traced to any acts committed by the Commonwealth. *See Penobscot Air Ser-*

*vices, Ltd. v. Federal Aviation Administration*, 164 F.3d 713, 727 (1st Cir.1999). As the discussion above demonstrates, the PBA is not an alter ego of the Commonwealth. The PBA alone was the entity that terminated Ms. Iravedra's employment, not the Commonwealth. Accordingly, her termination cannot be fairly traced to any acts committed by the Commonwealth. It follows then that Plaintiff lacks standing to sue the Commonwealth. *See ibid.*

# VI

## CONCLUSION

In conclusion, after applying the required criteria, the Court concludes that the PBA is a public corporation with sufficient identity and distinction, vis-a-vis the Commonwealth government, so as to be liable to be sued alone in this case. In the case at bar, the PBA, not the Commonwealth, was Plaintiff's legal employer. Hence, the PBA, not the Commonwealth, is the real party in interest. The PBA's autonomy is clearly confirmed by its enabling statute. The PBA's enabling law states that it has the power "[t]o sue and be sued, complain and defend in all courts of justice and administrative bodies." 22 P.R. STAT. ANN., § 906(4). From this it is clear that the law gives the PBA complete judicial personality to appear by itself in any forum, including this Court.

The separation between the PBA and the Commonwealth is sufficiently complete that the drafters of the law included an article separating these entities' funds. 22 P.R. STAT. ANN., § 914. The only factors that would seem to tip the balance towards concluding that the PBA and the Commonwealth are one and the same in this litigation (other than the ones already discussed) are that the PBA and its assets, are tax-exempt, *id.*, § 909, and that it performs an "essential" or "traditional" governmental or proprietary function. Never-

theless, these factors are not sufficient to defeat the Commonwealth's motion to dismiss. That the PBA is exempt from taxation is of minimal probative value; and that it performs an "essential" or "traditional" governmental or proprietary function is to be expected—it is after all, a public corporation.

Accordingly, taking **all factors** into consideration, and pursuant to the specific facts of this case, the Court hereby finds that the PBA is not a mere "alter ego" of the Commonwealth of Puerto Rico. They are two separate, albeit related, legal entities.

Moreover, to satisfy the Constitution's standing requirements, Plaintiff needed to show that (1) she suffered an "injury in fact"; it was (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) **the injury is fairly traceable to the challenged action of the defendant;** and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *See Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 180–81, 120 S.Ct. 693, 704, 145 L.Ed.2d 610 (2000); *Lujan v. Defenders of Wildlife*, 504 U.S. at 560–561, 112 S.Ct. at 2130. She has failed.

Plaintiff was an employee of the PBA, **not the Commonwealth.** And it was the PBA that terminated her employment, **not the Commonwealth.** Thus, the PBA Plaintiff lacks standing against the Commonwealth inasmuch as the injury she claims to have suffered—her termination cannot be fairly traced to any acts committed by the Commonwealth. *See Penobscot Air Services, Ltd. v. Federal Aviation Administration*, 164 F.3d at 727. Hence, she lacks standing to sue the Commonwealth.

**WHEREFORE,** since Plaintiff lacks standing to bring suit against the Commonwealth of Puerto Rico, the motion to

117

dismiss is hereby **GRANTED.**   (Docket No. 12).[10]

**IT IS SO ORDERED.**

**10.** This is, of course, a partial dismissal against the Commonwealth only.  The case will continue with respect to the PBA and others.  The Court will, however, refrain from issuing a partial judgment at this time.  The First Circuit strongly disfavors partial judgments as they foster piecemeal appeals. *See Nichols v. Cadle Co.,* 101 F.3d 1448, 1449 (1st Cir.1996) ("piecemeal appellate review invites mischief.  Because the practice poses a host of potential problems we have warned, time and again, that Rule 54(b) should be used sparingly."); *Zayas–Green v. Casaine,* 906 F.2d 18, 21 (1st Cir.1990) ("This final judg-

ment rule ... furthers 'the strong congressional policy against piecemeal review.' " *Id.* (*quoting In re Continental Investment Corp.,* 637 F.2d 1, 3 (1st Cir.1980)); *Comite Pro Rescate De La Salud v. Puerto Rico Aqueduct and Sewer Authority,* 888 F.2d 180, 183 (1st Cir.1989); *Consolidated Rail Corp. v. Fore River Ry. Co.,* 861 F.2d 322, 325 (1st Cir. 1988); *Spiegel v. Trustees of Tufts Coll.,* 843 F.2d 38, 43 (1st Cir.1988); *Santa Maria v. Owens–Illinois, Inc.,* 808 F.2d 848, 854 (1st Cir.1986)); *see also United States v. Nixon,* 418 U.S. 683, 690, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974).