USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT _________________________ No. 91-1602 METCALF & EDDY, INC., Plaintiff, Appellee, v. PUERTO RICO AQUEDUCT AND SEWER AUTHORITY, Defendant, Appellant. _________________________ ON REMAND FROM THE SUPREME COURT OF THE UNITED STATES _________________________ Before Breyer, Chief Judge, ___________ Aldrich, Senior Circuit Judge, ____________________ and Selya, Circuit Judge. _____________ _________________________ Perry M. Rosen, Paige E. Reffe, Thomas D. Roth, Cutler & ______________ _______________ _______________ _________ Stanfield, Arturo Trias, Hector Melendez Cano, and Trias, Acevedo _________ ____________ ____________________ ______________ & Otero on supplemental brief for appellant. _______ Peter W. Sipkins, Dorsey & Whitney, Jay A. Garcia-Gregory, _________________ ________________ _____________________ and Fiddler, Gonzalez & Rodriguez on supplemental brief for _______________________________ appellee. _________________________ May 3, 1993 _________________________ SELYA, Circuit Judge. Notwithstanding that trial is SELYA, Circuit Judge. ______________ still some distance away, this diversity case alights on our doorstep for the second time. The appellate roundelay began when Metcalf & Eddy, Inc. (M&E) sued the Puerto Rico Aqueduct and Sewer Authority (PRASA) for damages in Puerto Rico's federal district court. In the course of pretrial proceedings, the court denied PRASA the benefit of Eleventh Amendment immunity. The disappointed defendant essayed an interlocutory appeal. Following circuit precedent, see Libby v. Marshall, 833 F.2d 402 ___ _____ ________ (1st Cir. 1987), we dismissed the appeal for want of jurisdiction. M&E v. PRASA, 945 F.2d 10, 14 (1st Cir. 1991). ___ _____ The Supreme Court granted certiorari and, resolving an existing split in the circuits, determined that pretrial orders granting or denying Eleventh Amendment immunity were immediately appealable. PRASA v. M&E, 113 S. Ct. 684, 689 (1993). _____ ___ PRASA's appeal returns to us on remand from the Supreme Court. This time around, we must address the merits of the ruling below. After reviewing supplemental briefs and considering PRASA's overall relationship with the central government of Puerto Rico, we affirm the district court's denial of Eleventh Amendment immunity. I. I. __ Setting the Stage Setting the Stage _________________ Puerto Rico's legislature created PRASA over forty years ago in order to provide safe drinking water for inhabitants and to manage wastewater treatment. See P.R. Laws Ann. tit. 22, ___ 2 141-168 (1987 & Supp. 1989). PRASA's stewardship has not been without blemish. The incident that sparked this suit occurred in 1985, when the United States Environmental Protection Agency (EPA) brought an enforcement action pursuant to the Clean Water Act, 33 U.S.C. 1251-1376 (1988), seeking to provoke a substantial modernization of PRASA's wastewater treatment facilities. In due course, PRASA and EPA signed a consent order limning the changes necessary to bring PRASA's treatment system into compliance. Toward that end, PRASA hired M&E, a Massachusetts-based engineering firm with professed expertise in wastewater management, to oversee the refurbishment. M&E's duties included contracting for design and construction services on PRASA's behalf, procuring necessary equipment, and supervising work on the project. M&E was to be remunerated on a time-plus- expense basis, invoiced as accrued. Bills were due and payable within thirty days of presentment. Over time, project expenditures mushroomed well beyond budget. As costs mounted, PRASA grew increasingly inhospitable to M&E's invoices. The denouement occurred when PRASA, amidst charges of skulduggery, suspended all payments to M&E and demanded a complete audit. M&E consented to the audit, but did not acquiesce in the cessation of payments. The audit dragged on and PRASA accumulated a huge stockpile of M&E invoices. Its financial plight ingravescent, M&E sued before the audit had run its course to force payment of the arrearage (roughly 3 $52,000,000). Confronted by defendant's motion to dismiss, the district court determined as a matter of law that PRASA did not enjoy Eleventh Amendment immunity. In so holding, the court stressed that PRASA possessed the "ability to raise funds for payment of its contractual obligations" and, thus, its obligations "do not affect the Commonwealth's funds." PRASA appeals this decision as a legal rather than a factual matter. Although there may sometimes be genuine issues of material fact sufficient to preclude brevis disposition in Eleventh Amendment ______ litigation, there are none here. Agreeing with PRASA that the issue in this case is one of law, we afford plenary review to the district court's denial of immunity. See Dedham Water Co. v. ___ _________________ Cumberland Farms Dairy, Inc., 972 F.2d 453, 457 (1st Cir. 1992); _____________________________ New England Legal Found. v. Massachusetts Port Auth., 883 F.2d _________________________ ________________________ 157, 167 (1st Cir. 1989). II. II. ___ Analysis Analysis ________ A. A. __ The Eleventh Amendment: An Overview The Eleventh Amendment: An Overview ____________________________________ In Chisholm v. Georgia, 2 U.S. (2 Dall.) 419 (1793), ________ _______ the Supreme Court held that the federal courts had jurisdiction to hear a South Carolina citizen's suit against the State of Georgia. This result, popularly perceived as a threat to state autonomy in a newly minted federal system, produced an overwhelmingly negative reaction. See Edelman v. Jordan, 415 ___ _______ ______ 4 U.S. 651, 662 (1974). Ratification of the Eleventh Amendment followed apace.1 On its face, the amendment appeared to introduce a fairly simple proposition into our constitutional jurisprudence. Nevertheless, driven by the pressure of pragmatic necessity, judicial sketching of the amendment's scope and requirements has displayed a creative bent. Under the gloss supplied by this abstract impressionistic flair, the federal courts now read the Eleventh Amendment, notwithstanding its plain language, to prohibit them from hearing most suits brought against a state by citizens of that or any other state.2 See De Leon Lopez v. ___ ______________ Corporacion Insular de Seguros, 931 F.2d 116, 121 (1st Cir. 1991) ______________________________ (collecting cases); see also Edelman, 415 U.S. at 662-63. ___ ____ _______ Withal, there are apertures in the Eleventh Amendment's protective swaddling. If a case falls within one of these gaps, the Eleventh Amendment will not bar maintenance of the suit in a federal court. See Ramirez v. Puerto Rico Fire Serv., 715 F.2d ___ _______ ______________________ 694, 697, (1st Cir. 1983) (explaining that the Eleventh Amendment ____________________ 1The Amendment reads: The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State. U.S. Const. amend. XI. 2There is, of course, an exception for prospective injunctive relief. See, e.g., Ramirez v. Puerto Rico Fire Serv., ___ ____ _______ ______________________ 715 F.2d 694, 697 (1st Cir. 1983). 5 "bars federal court lawsuits by private parties insofar as they attempt to impose liabilities necessarily payable from public coffers, unless the state has consented to suit or unless the protective cloak of the amendment has been doffed by waiver or stripped away by congressional fiat"). Specifically, the amendment's raiment unravels if any one of four circumstances eventuates: a state may randomly consent to suit in a federal forum, see, e.g., Paul N. Howard Co. v. PRASA, 744 F.2d 880, 886 ___ ____ __________________ _____ (1st Cir. 1984), cert. denied, 469 U.S. 1191 (1985); a state may _____ ______ waive its own immunity by statute or the like, see, e.g., ___ ____ Edelman, 415 U.S. at 673; Congress may sometimes abrogate state _______ immunity (so long as it speaks clearly and acts in furtherance of particular powers), see, e.g., Fitzpatrick v. Bitzer, 427 U.S. ___ ____ ___________ ______ 445, 451-54 (1976); or under certain circumstances other constitutional imperatives may take precedence over the Eleventh Amendment's federal-court bar, see Pennhurst State Sch. & Hosp. ___ _____________________________ v. Halderman, 465 U.S. 89, 99 (1984) (involving Fourteenth _________ Amendment); Bitzer, 427 U.S. at 456 (same). ______ Here, M&E does not argue that PRASA consented to be sued, that Puerto Rico waived PRASA's immunity, that Congress abrogated PRASA's immunity, or that some other provision of the federal Constitution has usurped the field. Hence, this suit skirts the gaps. Rather, it is a "pure" Eleventh Amendment case in which this court must focus on whether PRASA enters the 6 Eleventh Amendment's sphere at all.3 B. B. __ The Test The Test ________ The mere imprimatur of state authority is insufficient to inoculate an agency or institution against federal court jurisdiction. A "slice of state power," without more, will not sate the Eleventh Amendment. Lake Country Estates, Inc. v. Tahoe __________________________ _____ Regional Planning Agency, 440 U.S. 391, 401 (1979). By the same ________________________ token and for much the same reasons political subdivisions of a state, such as municipalities and counties, do not lie within the Eleventh Amendment's reach. See, e.g., Owen v. City of ___ ____ ____ _______ Independence, 445 U.S. 622, 650 (1980); Moor v. County of ____________ ____ __________ Alameda, 411 U.S. 693, 717-721 (1973). Only the state itself and _______ "arms" of the state receive immunity. See PRASA v. M&E, 113 S. ___ _____ ___ Ct. at 689; Alabama v. Pugh, 438 U.S. 781, 782 (1978); see _______ ____ ___ generally De Leon Lopez, 931 F.2d at 121 (discussing coverage of _________ _____________ Eleventh Amendment). Because PRASA is not an organic part of the central government of Puerto Rico, we must investigate whether it is sufficiently a part of the central government to be considered an arm of the state. Framed in this way, the question poses an ____________________ 3We have consistently treated Puerto Rico as if it were a state for Eleventh Amendment purposes. See, e.g., De Leon Lopez, ___ ____ _____________ 931 F.2d at 121; Fred v. Roque, 916 F.2d 37, 38 (1st Cir. 1990); ____ _____ Paul N. Howard Co., 744 F.2d at 886; Ramirez, 715 F.2d at 697. ___________________ _______ Although M&E invites us to revisit this position, we decline the invitation. In a multi-panel circuit, newly constituted panels, generally speaking, are bound by prior panel decisions on point. See United States v. Gomez-Villamizar, 981 F.2d 621, 623 n.9 (1st ___ _____________ ________________ Cir. 1992); Jusino v. Zayas, 875 F.2d 986, 993 (1st Cir. 1989). ______ _____ So it is here. 7 essentially functional inquiry, not easily amenable to bright- line answers or mechanical solutions. The Eleventh Amendment's primary concern is to minimize federal courts' involvement in disbursal of the state fisc. It follows that "when the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit . . . ." Ford Motor Co. v. Department of Treasury, 323 U.S. ______________ ______________________ 459, 464 (1945); see also Lake Country Estates, 440 U.S. at 400- ___ ____ ____________________ 01 (identifying the desire to protect state treasuries as a driving force behind adoption of the Eleventh Amendment); Dugan _____ v. Rank, 372 U.S. 609, 620 (1963) (recognizing "that a suit is ____ against the sovereign `if the judgment sought would expend itself on the public treasury or domain'") (citation omitted); Ainsworth _________ Aristocrat Int'l Pty. Ltd. v. Tourism Co., 818 F.2d 1034, 1037 ___________________________ ___________ (1st Cir. 1987) (similar). Generally, if a state has a legal obligation to satisfy judgments against an institution out of public coffers, the institution is protected from federal adjudication by the Eleventh Amendment. See Quern v. Jordan, 440 ___ _____ ______ U.S. 332, 337 (1979); Reyes v. Supervisor of DEA, 834 F.2d 1093, _____ _________________ 1097-98 (1st Cir. 1987). Because it is not always limpid whether, or to what extent, the state treasury must stand behind the judgment debts of a particular institution, we have identified seven related areas as prospects for further inquiry. These areas, each of which can be mined for information that might clarify the 8 institution's structure and function, include: (1) whether the agency has the funding power to enable it to satisfy judgments without direct state participation or guarantees; (2) whether the agency's function is governmental or proprietary; (3) whether the agency is separately incorporated; (4) whether the state exerts control over the agency, and if so, to what extent; (5) whether the agency has the power to sue, be sued, and enter contracts in its own name and right; (6) whether the agency's property is subject to state taxation; and (7) whether the state has immunized itself from responsibility for the agency's acts or omissions. See Ainsworth Aristocrat, 818 F.2d at 1037 ___ ______________________ (collecting cases from other circuits recounting the same or similar factors). The list is not an all-inclusive compendium, for other areas of inquiry may prove fruitful in particular circumstances. It is, however, clear that all the pertinent factors have a common orientation: the more tightly the agency and the state are entangled, the more probable it becomes that the agency shares the state's Eleventh Amendment immunity. C. C. __ Applying the Test Applying the Test _________________ In Paul N. Howard Co., supra, we adjudicated a similar __________________ _____ dispute involving PRASA's renitency to make payments due under a construction contract. 744 F.2d at 881-84. The plaintiff prevailed in the district court. On appeal, PRASA advanced for the first time an added defense premised on Eleventh Amendment immunity. Although we suggested rather strongly that PRASA might 9 "not qualify for immunity under the Eleventh Amendment," id. at ___ 886, we did not conclusively resolve the issue because PRASA had purposefully availed itself of the federal forum and had thereby lost whatever entitlement to Eleventh Amendment immunity it might have possessed with respect to that particular suit. See id. ___ ___ The case before us today requires that we return to, and resolve, the question deferred in Howard.4 Faithful to the explication ______ of legal principles set out above, see supra Part II(B), we first ___ _____ examine PRASA's access to the public fisc and thereafter scrutinize how the associated factors are arrayed in this particular situation. 1. Access to the Commonwealth's Treasury. On the 1. Access to the Commonwealth's Treasury. ________________________________________ principal issue PRASA's access to the Commonwealth's treasury the die is quickly cast. Puerto Rico's legislature made it readily evident that PRASA shall have no power at any time or in any manner to pledge the credit or taxing power of the Commonwealth of Puerto Rico or any of its other political subdivisions. The bonds and other obligations issued by the Authority shall not be a debt of the Commonwealth of Puerto Rico nor of any of its municipalities nor of its other political subdivisions and neither the Commonwealth of Puerto Rico nor any such municipalities nor its other political subdivisions shall be liable thereon, nor shall such bonds or other obligations be paid out of any funds other ____________________ 4In this quest, we give no weight to the Howard court's ______ comments concerning PRASA's immunity, for we recognize that, as dictum, the comments are not binding. That is not to say, however, that Eleventh Amendment issues must always be resolved de novo. Where the agency's activity and its relation to the __ ____ state remain essentially the same, prior circuit precedent will be controlling. 10 than those of the Authority. P.R. Laws Ann. tit. 22, 144. The statute erects a wall between the agency's appetite and the public fisc. The existence of this statutory barrier presages the result we must reach: PRASA is not an arm of the state for Eleventh Amendment purposes.5 PRASA argues that, notwithstanding the Commonwealth's disavowal of its liabilities, the Commonwealth's significant financial support of PRASA's activities constitutes the sort of access to public funds that triggers Eleventh Amendment protection. We do not agree. Although the central government subsidizes the agency to some extent, PRASA relies mostly on user fees and bonds to support its operations. The government does not give PRASA a blank check or an indeterminant carte blanche allowing it to draw on the public treasury as it thinks necessary. Thus, control of the money flow from tax dollars is unilateral; if the Commonwealth chooses not to open the faucet, the agency must go thirsty or else, by resort to its own devices, procure the funds needed to stay liquid. We think PRASA's situation is not unlike that of a typical political subdivision. Such an entity often receives part of its budget from the state and raises the rest independently. Despite this dual funding, such entities do not ____________________ 5The statutory barrier is especially important in this case, for Puerto Rico's legislature has demonstrated that, when it wishes to do so, it knows exactly how to pledge the Commonwealth's resources in security for PRASA's debts. See P.R. ___ Laws Ann. tit. 22, 168 (explicitly agreeing to reimburse the Farmers Home Administration if PRASA should default on two particular loans). 11 automatically (or even usually) come within the zone of protection demarcated by the Eleventh Amendment. Thus, in Mt. ___ Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274 _______________________________________ _____ (1977), the Supreme Court denied Eleventh Amendment sanctuary to a school board despite the "significant amount of money" it received from the state. Id. at 280; accord Fitchik v. New ___ ______ _______ ___ Jersey Transit Rail Operations, Inc., 873 F.2d 655, 660 (3d Cir.) ____________________________________ (denying immunity to a regional rail authority despite state funding while noting "that an entity derives some of its income from the state does not mean that it is entitled to partake of the state's immunity"), cert. denied, 110 S. Ct. 148 (1989); see _____ ______ ___ also Blake v. Kline, 612 F.2d 718, 723 (3d Cir. 1979) ____ _____ _____ (recognizing that "the nature of the state's obligation to contribute may be more important than the size of the contribution"), cert. denied, 447 U.S. 921 (1980). The case at _____ ______ bar is cut from much the same cloth. We hold, therefore, that a state agency cannot claim Eleventh Amendment immunity solely on the basis that judgments against it may absorb unrestricted funds donated by the state and, in that way, redound indirectly to the depletion of the state's treasury. It follows that PRASA's assertion of Eleventh Amendment immunity in this case is severely flawed. 2. Other Factors. Although PRASA's inability to draw 2. Other Factors. _____________ on the public fisc cripples its immunity defense, we turn to the other factors mentioned in the case law in order that our investigation may be complete. In the circumstances at hand, 12 these factors, taken as an aggregate, corroborate the view that PRASA does not dwell within the Eleventh Amendment's shelter. To be sure, the two pans of the scale are not completely out of balance. PRASA to some extent wields the state's power; after all, the enabling legislation describes PRASA's mission to provide water and sewer services as fulfilling "an essential government function." P.R. Laws Ann. tit. 22, 142. Additionally, neither PRASA nor its revenue bonds are taxable, see id. 155; PRASA enjoys the power of eminent domain, ___ ___ see id. 144(e); and the Governor of Puerto Rico appoints five ___ ___ of PRASA's seven board members, see id. 143. ___ ___ PRASA places particular emphasis on the fact that its water and sewage functions are governmental rather than proprietary and insists that this circumstance renders it an arm of the state.6 But the nature of PRASA's function is only one ____________________ 6In arguing this point, PRASA leans heavily on our decision in Puerto Rico Ports Auth. v. M/V Manhattan Prince, 897 F.2d 1, _______________________ ____________________ 12 (1st Cir. 1990). This reliance is mislaid. In Manhattan _________ Prince, the Ports Authority was acting only as the licensor of ______ harbor pilots for whom it provided no training and over whom it exercised no assignment power. The Authority derived no revenue from the licensing function. Moreover, the legislature had explicitly made Authority members' misfeasance of the kind alleged in Manhattan Prince attributable only to the __________________ Commonwealth. See P.R. Laws Ann. tit. 23, 2303(b) (1987). ___ PRASA's situation is much different; it charges for its services, controls its total operations, and answers for its own bevues. Thus, a more apt Ports Authority analogy is found in Royal _____ Caribbean Corp. v. Puerto Rico Ports Auth., 973 F.2d 8 (1st Cir. _______________ _______________________ 1992). That case involved not licensing, but operation of the ports. See id. at 9. Because the Ports Authority charged user ___ ___ fees that supported the costs of its port operations and was relatively free of central government control, we ruled that it did not enjoy Eleventh Amendment immunity with respect to its management of the ports. Id. at 12. ___ 13 part of the equation, and, standing alone, it is insufficient to bring PRASA behind the Eleventh Amendment's shield. Educational services, for example, are, like water treatment, a traditional governmental function. Education, however, has an even longer, stronger governmental history than water treatment, and as attendance requirements attest, a more entrenched place in state government. Yet, despite these more evocative characteristics, school boards are not immune from suits in federal court. See ___ Mt. Healthy, 429 U.S. at 280-81 (holding that school board is not ___________ entitled to assert Eleventh Amendment immunity). On the other side of the scale, a heftier array of indicators suggests that PRASA is distinct from Puerto Rico's central government. PRASA has the power to raise funds through user fees (which, significantly, the Commonwealth, as a water- and-sewer user, must pay with respect to its own operations). See P.R. Laws Ann. tit. 22, 158. PRASA also has the right to ___ raise funds by issuing revenue bonds independently of the central government. See id. 152. The power and opportunity to ___ ___ generate a revenue stream and thereby finance an agency's operations is an important attribute of the agency's separate identity. Cf. Hernandez-Tirado v. Artau, 874 F.2d 866, 872 (1st ___ ________________ _____ ____________________ We recognize the seeming anomaly in a single agency being held to possess Eleventh Amendment immunity for some functions but not for others. However, the two cases cited above turned on the nature of the function involved in each instance, presumably because, in light of the Authority's portfolio of diverse operations, the question of access to the Commonwealth's treasury was fuliginous. The case before us is free from this strain of uncertainty. 14 Cir. 1989) (finding agency to be an arm of the Commonwealth because the central government had the sole power to raise money for the agency). Moreover, bondholders must look only to PRASA for recompense in the event of default. See P.R. Laws Ann. tit. ___ 22, 152(I). Then, too, PRASA is separately incorporated as "an autonomous government instrumentality." Id. 142. It may sue, ___ be sued, and enter contracts without the Commonwealth's particular permission. See id. 144(c), (d). Its funds are ___ ___ kept entirely separate from the funds of the central government and are totally controlled by its own board. Last, but surely not least, the Commonwealth has explicitly insulated itself from any financial responsibility with respect to PRASA's general debt and ordinary bonded indebtedness.7 See id. 144. ___ ___ One more item deserves mention. Whether an agency is an arm of the state vel non is a matter of federal, not local, ___ ___ law. See Blake, 612 F.2d at 722. Nevertheless, it is notable ___ _____ that the district court's view of PRASA as a separate political subdivision rather than as a part of the central government comports with that of Puerto Rico's highest tribunal. The Puerto Rico Supreme Court has consistently concluded that PRASA is not an alter ego of the central government. The court observed over ____________________ 7PRASA argues that because its generated revenues (bond monies and user fees) are "pledged" to current debts and projects, it will have no money to pay a judgment and any judgment creditor must, therefore, look to the Commonwealth. This is specious reasoning. If M&E prevails in this suit, it, like unsecured judgment creditors from time immemorial, would bear the risk that it might find few assets available to satisfy the judgment. 15 forty years ago that the legislature intended PRASA to "be as amenable to judicial process as any private enterprise would be under like circumstances . . . ." Arraiza v. Reyes, 70 P.R.R. _______ _____ 583, 587 (1949). More recently, the court reiterated that PRASA has a "personality separate and apart from that of the government," and does not have the "sovereign immunity traditionally enjoyed by the State." Canchani v. C.R.U.V., 105 ________ ________ P.R. Dec. 352, 489 n.2, 490 (1976); see also A.A.A. v. Union ___ ____ ______ _____ Empleados A.A.A., 105 P.R. Dec. 605, 628 (1976) (stating that ________________ PRASA is "unquestionably framed as a private enterprise or business and in fact operates as such"). While not dispositive, consistent decisions of a state's highest court construing an agency's or institution's relationship with the central government are important guideposts in a reasoned attempt to locate the agency's or institution's place within the scheme of things. See Ainsworth Aristocrat, 818 F.2d at 1037. ___ ____________________ 3. Assessing the Balance. The upshot is that PRASA 3. Assessing the Balance. _____________________ lacks eligibility for Eleventh Amendment immunity on several levels. First, and most fundamentally, PRASA's inability to tap the Commonwealth treasury or pledge the Commonwealth's credit leaves it unable to exercise the power of the purse. On this basis, PRASA is ill-deserving of Eleventh Amendment protection. Even putting aside PRASA's fiscal separation from the central government, we find that the sum total of the secondary factors preponderates against immunity. While PRASA indisputably operates with some quantum of state authority, as do many other 16 public utilities, it is readily apparent that Puerto Rico's legislature chose to structure an arm's-length relationship between PRASA and the central government. To implement this relationship, the legislature gave PRASA the power to raise funds, enter contracts, conceive strategy, and to make its own operational decisions. As a consequence of the legislative design, the central government does business with PRASA in the same manner as with other vendors: it pays for the services it receives and does not extend any credit or generic funding guarantees. When all the relevant factors are weighed, the indicia of separateness countervail the indicia of togetherness. III. III. ____ Conclusion Conclusion __________ We need go no further. The profound impact of PRASA's inability to reach the Commonwealth's treasury, and our calibrating measurement of the secondary factors, dictate that PRASA's assertion of immunity must fail. Consequently, we today confirm the suspicions adumbrated in Howard, 744 F.2d at 886: in ______ its current incarnation, the Puerto Rico Aqueduct and Sewer Authority is not safeguarded from federal court jurisdiction by the Eleventh Amendment. Therefore, the district court's denial of PRASA's motion to dismiss must be Affirmed. Affirmed. ________ 17