Carmen PASTRANA TORRES,
et al., Plaintiffs,

v.

Myrna ZABALA CARRION,
et al., Defendants.

No. CIV.04–2357(JAF).

United States District Court,
D. Puerto Rico.

July 11, 2005.

Claudio Aliff-Ortiz, Eliezer Aldarondo–Ortiz, Ivan M. Castro–Ortiz, Pablo Landrau–Pirazzi, Simone Cataldi–Malpica, Aldarondo & Lopez Bras, Guaynabo, PR, for Plaintiffs.

Juan M. Frontera–Suau, Frontera Suau Law Office, Anabelle Quinones–Rodriguez, Department of Justice, Celina Romany–Siaca, Celina Romany Law Office, San Juan, PR, for Defendants.

## OPINION AND ORDER

FUSTE, Chief Judge.

Plaintiffs, Carmen Pastrana Torres, Beatriz Rivera Cruz, and René Rivera Murillo, bring the present § 1983 action against Defendants, Corporación de Puerto Rico para la Difusión Pública ("WIPR"), and WIPR's president, Mirna Yolanda Zabala Carrión ("Defendant Zabala"), in her personal and official capacities; alleging violations of Plaintiffs' rights under the First Amendment of the United States Constitution. U.S. CONST. amend. I; 42 U.S.C. § 1983 (2003); *Docket Document No. 1.* Plaintiffs seek, inter alia, compensatory and punitive damages, front pay, back pay, and attorney's fees. *Id.*

Defendants move to dismiss, arguing that: (1) Plaintiffs' expressions were not protected speech; (2) we should abstain from exercising jurisdiction because of a pending state court action involving the same issues underlying the present complaint; and (3) Defendant Zabala in her official capacity and WIPR are entitled to Eleventh Amendment Immunity, and Defendant Zabala in her personal capacity is entitled to qualified immunity. *Docket Document No. 12.*

In the present order, we consider Defendants' abstention argument, which relies on *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and its progeny, for the proposition that concerns for comity and federalism militate against our enjoining "a pending state ... proceeding except in the very unusual situation that

an injunction is necessary to prevent great and immediate irreparable injury." *Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc.,* 477 U.S. 619, 627, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986); *Docket Document No. 12.* We decline to abstain, finding that neither *Younger* nor *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), abstention apply to the present case. Additionally, we decline to extend Eleventh Amendment immunity to Defendants.

Regarding the remaining issues in Defendants' motion to dismiss, we convert the motion into a motion for summary judgment and grant parties the "opportunity to present all material made pertinent to such a motion by Rule 56" before making a final ruling. FED. R. CIV. P. 12(b)(6).

## I.

### *Factual and Procedural Synopsis*

Unless otherwise indicated, we derive the following factual summary from the complaint. *Docket Document No. 1.* Plaintiff Pastrana Torres has worked for WIPR since 1993. Until 1996, she held the position of Human Resources Director. From 1996 until 2001, she held the position of assistant to WIPR's president (a predecessor to Defendant Zabala), a trust position. From 2001 until the present day, Plaintiff Pastrana Torres has been a Human Resources and Labor Relations Specialist, a career position.

Plaintiff Rivera Cruz has worked for WIPR since 1995. She was an Accounting Clerk until 1998, when she was promoted to Accounting and Budget Supervisor.

Until August 26, 2004, Plaintiff Rivera Murillo held the career position of the Budget and Finance Deputy Director at WIPR.

On August 19, 2004, the WIPR Board of Directors implemented a number of structural and personnel changes. On August 26, 2004, Plaintiffs Rivera Cruz and Rivera Murillo each received a letter from Defendant Zabala in her capacity as WIPR president. On August 30, 2004, Plaintiff Torres also received a letter from Defendant Zabala.

The letters addressed to Plaintiff Rivera Cruz and Rivera Murillo informed them that the Finance and Budget Office would be restructured so as to segregate the financial and budgetary work into separate departments. Accordingly, Plaintiff Rivera Cruz's title would be changed to Accounting Supervisor, and she would no longer be responsible for any budgetary functions. Plaintiff Rivera Murillo's title would be reclassified as Finance Deputy Director, and he would no longer have budgetary functions.

The letter sent to Plaintiff Pastrana Torres informed her that the Human Resources Office would be restructured, leading to the reclassification of her position. Her new position assigned her functions of greater complexity and responsibility, though she would not receive a salary increase.

Plaintiffs were displeased with the changes and the way in which they had been effected. On August 26 and September 3, each Plaintiff sent a letter to Defendant Zabala expressing his or her dissatisfaction with, inter alia: (1) the secret, rushed, selective, and unilateral manner in which the changes were implemented; (2) the action taking place two days prior to the Puerto Rico electoral ban period, and its effects only touching upon appointees of the prior administration; (3) the violation of legal and regulatory provisions; (4) in Plaintiff Pastrana Torres' case, a hierarchical imbalance and lack of uniformity in how salaries are matched to responsibility levels; (5) a lack of consultation with the affected employees, who were not given

any opportunity to participate or contribute to the decision-making process; (6) selective changes implemented in order to justify the creation of new trust positions; and (7) a failure to indicate the legal basis for the actions or to notify the effected employees of their rights to request administrative or judicial review.

On September 23, Defendant Zabala sent reply letters to each Plaintiff, indicating that she considered their expressions to be disrespectful, in violation of WIPR's personnel policies, and that as a disciplinary measure, each Plaintiff would be suspended from salary and employment. Plaintiff Pastrana Torres was informed that she would receive a sixty-day suspension; Plaintiffs Rivera Cruz and Rivera Murillo were informed that they would each receive a forty-day suspension.[1]

Defendant Zabala's letters notified Plaintiffs of their right to an administrative hearing in which they could contest the disciplinary suspensions.

On October 18, 2004, Plaintiff Pastrana Torres notified Defendants of her desire for an informal administrative hearing.[2]

On November 17, 2004, after concluding the administrative hearings, Defendant Zabala transmitted letters to each Plaintiff executing the suspensions and notifying them of their right to appeal. Plaintiffs Pastrana Torres and Rivera Cruz were each suspended for thirty days. Plaintiff Rivera Murillo was suspended for forty days.

On December 10, 2004, Plaintiffs filed the present complaint, arguing that the expressions set forth in their letters to Defendant Zabala constituted speech on matters of public concern and were, there-

fore, protected by the First Amendment. *Docket Document No. 1.* They further allege that the retaliatory personnel actions executed against them were made under color of state law, and were unlawful abridgments of their constitutional rights. *Docket Document No. 1.*

On December 14, 2004, Plaintiffs filed writs of revision to the Puerto Rico Circuit Court of Appeals ("the appellate court") based on the earlier administrative decision to uphold their suspensions. On December 15, 2004, the appellate court consolidated Plaintiffs' three separate claims into a single claim and issued injunctive relief on Plaintiffs' behalf, ordering Defendants to grant Plaintiffs their employment benefits and show cause as to why the suspension decisions should not be permanently reversed.

On March 18, 2005, Defendants filed a motion to dismiss. *Docket Document No. 12.* Plaintiffs oppose Defendants' motion to dismiss. *Docket Document No. 15.*

## II.

### *Analysis*

A. *Younger Abstention*

The abstention rule articulated in *Younger v. Harris* originally affected only those cases in which there were ongoing state criminal proceedings. 401 U.S. 37, 53–54, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). In a series of subsequent holdings, the Supreme Court expanded the abstention rule to apply to certain types of state civil proceedings. *Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706, 716–17, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996). *Younger* abstention may be appropriate

---

1.  Relevant portions of Defendant Zabala's letter, Plaintiff Pastrana Torres' reply, and Defendant Zabala's post-hearing letter have been translated by the court and are attached to the present opinion and order.

2.  Given the subsequent turn of events, we assume that Plaintiffs Rivera Murillo and Rivera Cruz also exercised their administrative hearing rights, although only Plaintiff Pastrana Torres' letter appears in the record.

when pending state civil action are: (1) "quasi-criminal (or at least 'coercive') state civil proceedings- and even administrative proceedings brought by the state as enforcement actions against an individual," *Rio Grande Cmty. Health Ctr. v. Rullan*, 397 F.3d 56, 69 (1st Cir.2005) (citing *Maymo–Melendez v. Alvarez–Ramirez*, 364 F.3d 27, 31–32 (1st Cir.2004)); *see also Huffman v. Pursue, Ltd.*, 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975) (holding that court should have applied *Younger* when faced with constitutional challenge to state nuisance proceedings); or (2) "in those situations uniquely in furtherance of the fundamental workings of a state's judicial system." *Rio Grande*, 397 F.3d at 69. In this second category fits cases such as *Juidice v. Vail*, 430 U.S. 327, 336 n. 12, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977) (finding court should have abstained from adjudicating a challenge to a state's contempt process in order to protect "the authority of the judicial system, so that its orders and judgments are not rendered nugatory"); *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987)(deciding that abstention is appropriate when plaintiff challenged a state post-judgment appeal bond).

The present case parallels a state proceeding in which Plaintiffs challenged their employment suspensions at an informal administrative hearing and then appealed the hearing's outcome directly to the Commonwealth appellate court; as such it does not fit into either *Younger* category. As Plaintiffs initiated the pending state proceedings in order to contest their suspensions, the state proceedings are remedial, rather than coercive. *See Kercado–Melendez v. Aponte–Roque*, 829 F.2d 255, 260 (1st Cir.1987) (distinguishing remedial administrative proceedings, "triggered only on [federal suit plaintiffs'] initiative," from coercive administrative proceedings, "which [the federal suit plaintiffs] did not initiate, but in which their presence was mandatory"). Remedial administrative proceedings may justify federal court abstention, but only when plaintiffs are alleging "injury arising from, or seek relief directed to, [the] ongoing state proceeding," rather than "actual injury arising from action undertaken and completed by state actors." *Kercado–Melendez*, 829 F.2d at 261. In the latter instance, the state interest at stake is "severely diminished because the federal plaintiffs [are] not seeking to mount a broad, constitutional attack on the legitimacy of state proceedings," and federal court abstention is therefore unnecessary. *Id.* If Plaintiffs were attacking the state proceeding, abstention may have been appropriate under the second *Younger* category articulated in *Rio Grande*. *Rio Grande*, 397 F.3d at 69. Because Plaintiffs' alleged harm arises from their employment suspensions, not from the subsequent proceedings, we find no reason to abstain.

The distinction between a coercive and remedial state proceedings is subtle but important. In *Kercado–Melendez*, the plaintiff, a public employee, received a letter dismissing her from employment and notifying her of her right to administrative review. 829 F.2d at 261. The adverse employment action was ordered effective upon the letter's receipt, immediately triggering the plaintiff's legal rights regardless of her decision to pursue remedial review at an administrative hearing. *Id.* The First Circuit found that because the plaintiff was required to take affirmative steps to initiate administrative appeal, under *Patsy v. Florida Board Of Regents*, 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982) she was not required to exhaust her state remedies before proceeding to federal court. The federal court, therefore, did not need to abstain from hearing

the case. *Kercado–Melendez*, 829 F.2d at 261.

The present case is strongly analogous to *Kercado–Melendez*. Defendant Zabala's letter to Plaintiff Pastrana Torres (and we assume her letters to Plaintiffs Rivera Cruz and Rivera Murillo were similarly worded) stated:

> [I]t is ... my intention to suspend you from employment and salary for a period of sixty (60) business days .... Notwithstanding the above, you are advised of your right to request an informal administrative hearing, in writing, within fifteen (15) business days from the date on which you receive this letter. At this hearing you have a right to present whatever evidence you deem necessary and to be represented by an attorney, if you so wish. Once this time period has elapsed with no request on your part for such a hearing, the disciplinary measure described above shall be applied.

*(Court translation attached to this Opinion and Order)*. Although Plaintiffs' termination letter renders the suspensions effective only after the fifteen-day administrative review period expires, whereas in *Kercado–Melendez* the termination was rendered effective immediately, we find this difference trivial. The termination in *Kercado–Melendez* was legally binding "after ten days only if the teacher does not appeal from it." *Id.* at 268 (Breyer, dissenting).

Like *Kercado–Melendez* and *Patsy*, the present case "involves a federal plaintiff aggrieved by an allegedly unconstitutional" adverse employment action by state officials for which the Supreme Court "has imposed no requirement that [Plaintiffs] pursue [their] administrative remedies" before proceeding to federal court. *Kercado–Melendez*, 829 F.2d at 262. Plaintiffs take umbrage at Defendant Zabala's decision to suspend them, not at the subsequent proceedings. *Docket Document No.*

*1.* Because Plaintiffs' claim does "not involve a challenge to the legitimacy of a pending state proceeding," this is not an appropriate occasion for abstention. *Id.*; *cf. Maymo–Melendez*, 364 F.3d at 36 (finding *Younger* abstention was appropriate because the plaintiff was suspended only after full-fledged administrative proceedings, and thus the federal claim amounted to an attack on the state proceedings).

### B. *Colorado River Abstention*

Plaintiffs charitably argue that *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), rather than *Younger*, provides the proper analytical framework for determining whether abstention is appropriate, *Docket Document No. 15.*

■ Jurisdiction should be surrendered under *Colorado River* sparingly, and only in exceptional circumstances. 424 U.S. at 813, 817, 96 S.Ct. 1236 ("Abstention from the exercise of federal jurisdiction is the exception, not the rule"; federal courts have a "virtually unflagging obligation ... to exercise the jurisdiction given them."); *Villa Marina Yacht Sales, Inc. v. Hatteras Yachts*, 915 F.2d 7, 13 (1st Cir.1990) (finding that "something more than a concern for judicial efficiency must animate a federal court's decision to give up jurisdiction."). Grounds for dismissal under *Colorado River* rest on "considerations of 'wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation,'" 424 U.S. at 817, 96 S.Ct. 1236 (quoting *Kerotest Mfg. Co. v. C–O–Two Fire Equip. Co.*, 342 U.S. 180, 183, 72 S.Ct. 219, 96 L.Ed. 200 (1952)), but are respectful of the general rule that between state and federal courts, "'the pendency of an action in the state court is no bar to proceedings concerning the same matter'" in federal

court. *Id.* (quoting *McClellan v. Carland,* 217 U.S. 268, 282, 30 S.Ct. 501, 54 L.Ed. 762 (1910)).

■ The First Circuit has articulated the following considerations to determine whether federal proceedings concurrent to state proceedings should be terminated pursuant to *Colorado River:* "(1) whether either court has assumed jurisdiction over a *res;* (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether federal law or state law controls; and (6) whether the state forum will adequately protect the interests of the parties." *Currie v. Group Ins. Comm'n,* 290 F.3d 1, 10 (citing *Rivera–Puig v. Garcia–Rosario,* 983 F.2d 311, 320–21 (1st Cir. 1992)). In applying this test, we maintain a "heavy presumption favoring the exercise of jurisdiction." *Hatteras Yachts,* 915 F.2d at 13.

■ Neither *res* nor forum inconvenience are at issue here. *See Currie,* 290 F.3d at 10. In determining whether this case presents the sort of piecemeal litigation that might counsel in favor of abstention, we see nothing "beyond the routine inefficiency that is the inevitable result of parallel proceedings." *Hatteras Yachts,* 915 F.2d at 16. Plaintiffs' First Amendment claim is straightforward, and implicates no distinct state law issues-a fact that sways mildly against the winds of abstention. *Rio Grande Cmty. Health Ctr., Inc. v. Rullan,* 397 F.3d 56, 72 (1st Cir.2005) (finding lack of "reason to defer to the state court's interpretation of the legal issues involved" as a factor weighing against abstention). Further, the presence of a federal law issue such as a First Amendment claim "must always be a major consideration weighing against surrender" of jurisdiction. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 26, 103 S.Ct. 927, 74 L.Ed.2d

765 (1983). As to whether the Puerto Rico court can adequately protect Plaintiffs' interests, we see the competing considerations as essentially balanced: on the one hand, Plaintiffs' only available remedy in Commonwealth appellate court is back pay, whereas their prayer for relief in federal court includes compensatory and punitive damages, and attorney's fees. *Docket Document No. 1.* On the other hand, in both forums Plaintiffs are able to voice their First Amendment claim, one which is not a highly technical legal issue that requires a federal court's particularized knowledge. *See Rio Grande,* 397 F.3d at 72 (weighing the federal courts' greater familiarity with the Medicaid Act in favor of maintaining jurisdiction).

The only factor weighing in favor of abstention is the timing of Plaintiffs' federal suit. Plaintiffs elected to pursue an administrative remedy instead of bringing their constitutional claim in federal court; only after receiving an unfavorable decision at the informal hearing did they file suit in federal court and, almost simultaneously, appeal the administrative decision to the Puerto Rico appellate court. *Docket Document Nos. 15, 24; see Hatteras Yachts,* 915 F.2d at 14 (finding decision to file suit "in the Commonwealth court before initiating its federal action" as "primary factor ... counseling in favor of a surrender of federal jurisdiction."). Plaintiffs filing in federal court as a "reaction to an adverse state court action [is] a factor that weighs heavily in favor of abstention." *Id.* However, the state proceeding that preceded Plaintiffs' federal filing was an informal administrative hearing presided over by Defendant Zabala, not a state court proceeding. We can find no cases in which federal courts have abstained under *Colorado River* because of this sort of informal hearing. *HCMF Corp. v. Gilmore,* 26 F.Supp.2d 873, 878 (W.D.Va. 1998) ("A fact-finding conference falls far

short of qualifying as a duplicative, parallel state-court proceeding."); *compare Fireman's Fund Ins. Co. v. Quackenbush,* 87 F.3d 290 (9th Cir.1996) (upholding abstention because of prior formal administrative hearing governed by State Insurance Commissioner). Given our strong presumption against *Colorado River* abstention, we are unwilling to extend its abstention principles to the present circumstances.

### C. *Eleventh Amendment Immunity*

Defendants argue that WIPR is a governmental instrumentality, an alter ego or arm of the Commonwealth, protected from suit by Eleventh Amendment immunity. We note as a preliminary matter that Defendant WIPR and/or WIPR employees in their official capacity have appeared before this court before and have never enjoyed Eleventh Amendment immunity, but we can find no holding directly pertaining to the issue of immunity for WIPR. *See, e.g. Gierbolini Colon v. Aponte Roque,* 666 F.Supp. 334 (D.P.R.1987)(awarding damages to Plaintiff by WIPR general administrator in his official capacity); *Alberty–Velez v. Corp. de P.R. Para La Difusión Pública,* 361 F.3d 1 (1st Cir.2004)(ruling on WIPR's behalf, but not on immunity grounds).

■ The Eleventh Amendment deprives the federal courts of power to hear claims for damages against any of the United States, and applies to Puerto Rico. *Figueroa–Rodriguez v. Aquino,* 863 F.2d 1037, 1044 (1st Cir.1988); *Ramirez v. P.R. Fire Serv.,* 715 F.2d 694, 697 (1st Cir.1983).[3] In order to determine whether WIPR is an alter ego of the Commonwealth, we must consider "whether it performs a governmental function, whether it functions with substantial autonomy, to what extent it is financed independently of the state trea-

sury, and if a judgment sought to be entered against [it] will be satisfied out of the state treasury." *Culebras Enters. Corp. v. Rivera Rios,* 813 F.2d 506, 517 (1st Cir. 1987). Other considerations are whether WIPR has the power "to sue and be sued and enter into contracts; whether the agency's property is immune from taxation and whether the state has insulated itself from responsibility" for WIPR's operations. *P.R. Ports Auth. v. M/V Manhattan Prince,* 897 F.2d 1, 9 (1st Cir.1990). In *Metcalf & Eddy, Inc. v. P.R. Aqueduct and Sewer Auth.,* 991 F.2d 935, the First Circuit saw access to the Commonwealth's treasury as "the principle issue."

■ WIPR is a governmental instrumentality and public corporation. In 1987, the Puerto Rico legislature severed WIPR's ties to the Puerto Rico Telephone Authority, rendering it autonomous, and independent and separate from any other agency, department or governmental instrumentality. 27 L.P.R.A. § 501. (2002). It is empowered to sue and be sued, enter into contracts, and receive, administer, and comply with the legal conditions attached to gifts, grants, and donations. 27 L.P.R.A. § 504. The Commonwealth contributes all or nearly all of the financial resources necessary for WIPR's continued operation, however WIPR also relies on private donations and we find nothing in Title 27 that grants WIPR unfettered access to the public treasury. *See Metcalf & Eddy,* 991 F.2d at 940–941 (distinguishing between Commonwealth's significant financial support for agency and carte blanche access to treasury funds).

Considering these factors, we find that WIPR is exactly the sort of "municipal corporation ... to which the Eleventh Amendment does not extend." *Ainsworth*

---

**3.** The Eleventh Amendment has been held to bar an award of back pay against a state or

alter ego of the state. *Figueroa–Rodriguez,* 863 F.2d at 1044.

*Aristocrat Intern. Pty. Ltd. v. Tourism Co. of the Commonwealth of P.R.*, 818 F.2d 1034, 1036 (1st Cir.1987). Although WIPR performs a governmental function and is financially dependent on the Commonwealth, we find that its autonomy, the fact that it "has been separately incorporated," and its "power to sue and be sued" militate against finding it immune from suit. *In re San Juan Dupont Plaza Hotel Fire Litig.*, 888 F.2d 940, 942 (1st Cir.1989). We, therefore, decline to extend Eleventh Amendment immunity to Defendants.

**D.  *Summary Judgment Conversion***

Defendants argue that Plaintiffs' letters were not protected speech under the First Amendment and, therefore, Plaintiffs have failed to state a cognizable claim for relief. *Docket Document No. 12.* Determining "whether the court is presented with an actionable claim for the infringement of a public employee's First Amendment rights" is a three-pronged, fact-intensive test. *O'Connor v. Steeves*, 994 F.2d 905, 912 (1st Cir.1993).

First, we must determine, "on the basis of the content, form and context of a given statement, as revealed by the whole record,' whether the employee was speaking 'as a citizen upon matters of public concern,' or, alternatively, 'as an employee upon matters only of personal interest.'" *Id.* (citing *Connick v. Myers*, 461 U.S. 138, 147–48, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983)). Second, if the employee spoke on a matter of public concern, we must balance the strength of the First Amendment interest, and the "parallel public interest in the information which the employee sought to impart, against the strength of the countervailing governmental interest" in promoting efficiency in the public service. *O'Connor*, 994 F.2d at 912. Third, if the employee's First Amendment interests were more compelling than the governmental interest, the employee must show that the protected expression was a "sub-stantial or motivating factor in the adverse employment decision." *Id.*

In their complaint, Plaintiffs included the letters sent to Defendant Zabala that led to the suspension rulings. *Docket Document No. 1.* Defendants ask us to assess the letters' content and inquire as to whether it involves protected speech. This inquiry quickly requires us to "delve into [Plaintiffs'] personal motives." *Fabiano v. Hopkins*, 352 F.3d 447, 454 (1st Cir.2003). We need also inquire into "whether the community has in fact manifested a legitimate concern in the internal workings" of WIPR, and whether the form of Plaintiffs' expression "suggests a subjective intent to contribute to any such public discourse." *Id.* (citing *O'Connor*, 994 F.2d at 914). Due to the fact-intensive nature of these questions, we are unable to engage in the first step of our inquiry at this preliminary stage in the litigation. However, simply denying Defendants' motion to dismiss is unnecessary (while certainly feasible, given the simple pleading requirements of Federal Rule of Civil Procedure 8(a); *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002)), because Plaintiffs' letters are already part of the record, and their content is the centerpiece of our First Amendment inquiry.

Defendant Zabala's claim for qualified immunity also requires us to assess facts not available to us at this time. *Docket Document No. 12.* Qualified immunity may "shield a government official performing discretionary functions from damages liability in civil rights actions." *Raffucci Alvarado v. Sonia Zayas*, 816 F.2d 818, 820 (1st Cir.1987). The standard in reviewing a qualified immunity claim is "the objective reasonableness of an official's conduct." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). We are unable to make a determination on this issue based on the com-

plaint's bare contents. *See Raffucci Alvarado,* 816 F.2d at 821.

Because some, but not all, of the facts have been made part of the record, Defendants' motion to dismiss already resembles a motion for summary judgment. The motion relies entirely on the content of Plaintiffs' letters, which were unnecessarily included in the complaint (in which case Defendants' argument would have been unavailable at this preliminary stage in the litigation), and anyway, upon which we could not engage in a complete *O'Connor* analysis without reference to a broader factual record. Rather than decide Defendants' motion to dismiss in its ambiguous state, we find it more expedient to convert it into a motion for summary judgment. *See Whiting v. Maiolini,* 921 F.2d 5, 6 (1st Cir.1990).

### III.

### *Conclusion*

In accordance with the foregoing and Rule 12(b)(6), on the remaining issues of qualified immunity and whether Plaintiffs' letters were protected speech, we convert Defendants' motion to dismiss into a motion for summary judgment. The parties shall have the opportunity to engage in **limited, thirty-day** discovery by deposition. Furthermore, Plaintiffs and Defendants both may submit one (1) concise brief in support of their respective positions on the issue of summary judgment, before the fiftieth (50th) day from the date of this Order.

**IT IS SO ORDERED.**