# United States Court of Appeals

## For the First Circuit

No. 05-2298

CARMEN D. PASTRANA-TORRES; BEATRIZ RIVERA CRUZ;
RENE RIVERA-MURILLO,

Plaintiffs, Appellees,

v.

CORPORACIÓN DE PUERTO RICO PARA LA DIFUSIÓN PÚBLICA,

Defendant, Appellant,

MYRNA YOLANDA ZABALA-CARRION, in her personal capacity and
in her official capacity as President of Corporacion de Puerto
Rico para la Difusión Pública,

Defendant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO
[Hon. José Antonio Fusté, U.S. District Judge]

Before

Lynch and Howard, Circuit Judges,

and Stafford,* Senior District Judge.

Juan M. Frontera-SUAU, on brief for appellants.
Pablo Landrau Pirazzi, with whom Aldarondo & López Bras was
on brief, for appellees.

August 18, 2006

*For the Northern District of Florida, sitting by designation.

**HOWARD**, <u>Circuit Judge</u>.  This is an interlocutory appeal brought by the Corporación de Puerto Rico Para La Difusión Pública (WIPR), Puerto Rico's public broadcasting company.  WIPR challenges a district court ruling that it is not an arm of the Commonwealth of Puerto Rico and therefore does not share in the Commonwealth's Eleventh Amendment immunity from suit in federal court.  <u>See</u> U.S. Const. amend. XI.  We affirm.

The plaintiffs are employees of WIPR who have filed a federal court action, seeking damages and declaratory relief, that alleges that WIPR took adverse employment actions against them in retaliation for making statements that are protected by the First Amendment.[1]  WIPR moved to dismiss the complaint on several grounds.  For present purposes, only its argument for dismissal of the damages claims under the Eleventh Amendment is relevant.  WIPR claimed that it is an arm of the Commonwealth and is therefore immune from liability for damages in federal court.  <u>See</u> <u>De Leon Lopez</u> v. <u>Corporación Insular de Seguros</u>, 931 F.2d 116, 121 (1st Cir. 1991) (stating that the Commonwealth of Puerto Rico is treated as a state for purposes of the Eleventh Amendment).

The district court rejected this argument.  <u>Pastrana Torres</u> v. <u>Zabala Carrión</u>, 376 F. Supp. 2d 209, 216-17 (D.P.R. 2005).  It ruled that "WIPR is exactly the sort of municipal

---

[1]The complaint also names WIPR's president Myrna Yolanda Zabala-Carrión as a defendant in her individual and official capacities.  She is not a party to this appeal.

corporation to which the Eleventh Amendment does not extend." Id. at 216. It based this conclusion on WIPR's ability to "sue and be sued" and the fact that it "has been separately incorporated." Id. at 217. WIPR timely appealed this ruling. See Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 147 (1993) (holding that entities claiming to be "arms of the State" may bring interlocutory appeals from district court orders denying claims of Eleventh Amendment immunity).

We review de novo the conclusion that WIPR is not entitled to Eleventh Amendment immunity. See Arecibo Cmty. Health Care, Inc. v. Puerto Rico, 270 F.3d 17, 22 (1st Cir. 2001). As this case is before us after the denial of WIPR's motion to dismiss, we accept the well-pleaded allegations as true. See Alternative Sys. Concepts, Inc. v. Synopsys, Inc., 374 F.3d 23, 29 (1st Cir. 2004). The burden of proving that Eleventh Amendment immunity applies rests with WIPR. See Wojcik v. Mass. State Lottery Comm'n, 300 F.3d 92, 99 (1st Cir. 2002).

"The Eleventh Amendment largely shields States from suit in federal court without their consent, leaving parties with claims against a State to present them, if the State permits, in the State's own tribunals." Hess v. Port Auth. Trans-Hudson Corp., 513 U.S. 30, 39 (1994). This immunity applies only to the states themselves and entities that are determined to be arms of a state. See Metcalf & Eddy, Inc. v. Puerto Rico Aqueduct & Sewer Auth.,

-4-

991 F.2d 935, 939 (1st Cir. 1993). Arm-of-the-state questions often arise with respect to special-purpose public corporations established by the state, such as WIPR. See Redondo Constr. Corp. v. Puerto Rico Highway and Transp. Auth., 357 F.3d 124, 126 (1st Cir. 2004).

This circuit has developed a two-part test to resolve arm-of-the-state questions. See Fresenius Med. Care Cardiovascular Res., Inc. v. Puerto Rico & the Caribbean Cardiovascular Ctr. Corp., 322 F.3d 56 (1st Cir. 2003). The first part of the test asks whether the state has structured the entity to share its Eleventh Amendment immunity. See id. at 68. If the relevant indicia conclusively demonstrate that it has, Eleventh Amendment immunity applies. If, however, the indicia are inconclusive, the second part of the test focuses on the risk that money damages will be paid from the state's treasury if the entity is found liable. See id. This analysis centers on whether the state has obligated itself to pay the entity's debts. Id. If so, the entity is entitled to Eleventh Amendment immunity. See id.

The Fresenius test incorporates the twin interests served by the Eleventh Amendment: protecting the state's dignity interest in avoiding being haled into federal court, see Fed. Mar. Comm'n v. South Carolina Ports Auth., 535 U.S. 743, 760 (2002), and protecting the public fisc, Edelman v. Jordan, 415 U.S. 651, 677 (1974). We perform the arm-of-the-state analysis with "caution,

-5-

[as] it would be . . . an affront to the state's dignity and fiscal interests were a federal court to find erroneously that an entity was an arm of the state, when the state did not structure the entity to share its sovereignty."  Fresenius, 322 F.3d at 63.

We begin by considering whether the Commonwealth has structured WIPR to share its sovereignty.  See id. at 68.  This determination is a question of federal law but can be answered only after consulting the provisions of Commonwealth law that define WIPR's character.  See Regents of the Univ. of Cal. v. Doe, 519 U.S. 425, 429 n.5 (1997).  The control statutorily asserted by the Commonwealth over WIPR is an important aspect of this inquiry. Fresenius, 322 F.3d at 68.

WIPR operates with a significant degree of autonomy from the Puerto Rico government.  WIPR's enabling act describes it as a "public corporation" with "a juridical personality that is independent and separate from any other entity, agency, department or instrumentality of the Government of Puerto Rico."[2]  Public Broadcasting Corporation for Puerto Rico Act of 1996 ("1996 Act"), Act No. 216, § 1, codified at P.R. Laws Ann. tit. 27, § 501; see

_____

[2]WIPR disputes the importance of this characterization, relying heavily on another provision in the enabling act declaring WIPR to be an "instrumentality of the Commonwealth of Puerto Rico." P.R. Laws Ann. tit. 27, § 501.  But similar language has appeared in the enabling acts of other Commonwealth entities and has been deemed  not dispositive on arm-of-the-state questions. See Metcalf & Eddy, 991 F.2d at 942; Ainsworth Aristocrat Int'l Pty. Ltd. v. Tourism Co. of P.R., 818 F.2d 1034, 1038 (1st Cir. 1987).

Fresenius, 322 F.3d at 68 (relying on similar language to support a conclusion that an entity was not an arm of the state). Its Board of Directors may "approve, amend, and repeal" regulations as it deems necessary to fulfill its mission and may determine the "use of its . . . operating budget." P.R. Laws Ann. tit. 27, § 503; see Royal Caribbean Corp. v. Puerto Rico Ports Auth., 973 F.2d 8, 11 (1st Cir. 1992) (stating that an entity's authority over its expenditures is an indicator of autonomy from the state). There is no provision for a veto by the Commonwealth over decisions by the Board of Directors. See Fresenius, 322 F.3d at 71-72 (noting that the Commonwealth's veto power over the decisions of a board is a "key element of control"). Moreover, the Board of Directors is permitted to select WIPR's president without interference from other Commonwealth officials. P.R. Laws Ann. tit. 27, § 503; cf. Wojcik, 300 F.3d at 100 (stating that the fact that the governor could reject choice for director of the Lottery Commission indicated that the Commission was an arm of the state).

Additionally, the enabling act empowers WIPR to sue and be sued, to enter into contracts, and to acquire and maintain property. P.R. Laws Ann. tit. 27, § 504(a)(5), (7), (8); see Metcalf & Eddy, 991 F.2d at 942 (stating that the power to sue and be sued and enter into contracts suggests that an entity is autonomous from the state). WIPR also is permitted to raise revenue for its operations by charging user fees "for the use of

its broadcasting facilities," and by soliciting donations.  P.R. Laws Ann. tit. 27, § 504(a)(10), (13); <u>Royal Caribbean</u>, 973 F.2d at 10 (stating that the ability of an entity to generate revenue indicates autonomy).[3]

Balanced against these indicators of autonomy are factors suggesting Commonwealth control.  WIPR is bound by Puerto Rico's Administrative Procedures Act in promulgating regulations to govern its affairs.  P.R. Laws Ann. tit. 27, § 504(a)(3); <u>Breneman</u> v. <u>United States ex. rel the Fed. Aviation Admin.</u>, 381 F.3d 33, 39 (1st Cir. 2004) (that entity must comply with the state administrative procedures act suggests state control).  It is governed by a Board of Directors comprised of certain government officials and private citizens appointed by the Governor and confirmed by the Senate.  P.R. Laws Ann. tit. 27, § 503; <u>Wojcik</u>,300 F.3d at 100 (that state commission was made up of government officials and politically-appointed citizens indicates state control).  And it is required to submit reports on certain subjects to the Governor and Legislature.  P.R. Laws Ann. tit. 27, § 505; <u>Royal Caribbean</u>, 973 F.2d at 12 (that entity must submit reports to the Governor is an indication of state control).

---

[3]There are indicia besides state control that inform the first aspect of the <u>Fresenius</u> test, including whether WIPR is performing a proprietary or government function and the existence of Commonwealth court decisions showing that WIPR is a part of the government of Puerto Rico. <u>See Fresenius</u>, 322 F.3d at 70-71.  But WIPR has not argued that either factor supports its immunity claim, and it has the burden to do so. <u>See id.</u> at 70.

As the above discussion shows, the relevant factors point in different directions. WIPR therefore has not demonstrated that the Commonwealth structured WIPR to share its sovereignty. <u>See</u> <u>Fresenius</u>, 322 F.3d at 72. Accordingly, we turn to consider whether the Commonwealth is obligated to pay WIPR's debts. <u>Id.</u> In conducting this inquiry, we examine "what is said by state law on the topic and what in fact has happened." <u>Id.</u>

WIPR's enabling act does not explicitly obligate the Commonwealth to pay WIPR's debts. But even without such an explicit promise, the Commonwealth may have assumed this obligation by binding itself to provide virtually all of the funds that WIPR needs to operate. <u>See</u> <u>id.</u> We therefore examine WIPR's statutory scheme, with particular emphasis on the provisions for raising revenue and funding. <u>See</u> <u>id.</u>

As mentioned above, WIPR is empowered to raise revenues through soliciting donations and charging user fees. <u>See</u> <u>supra</u> at 7-8. The enabling act requires WIPR to submit an annual work plan to the Governor and Legislature identifying specific activities and anticipated expenditures for the upcoming year. P.R. Laws Ann. tit. 27, § 505. In the session laws, the Legislature promised to authorize "all <u>additional</u> fiscal resources that are needed to carry out the annual" work plan. 1996 Act P.R. Laws § 14, codified at P.R. Laws Ann. tit. 27, § 501 (emphasis supplied). Thus, the Legislature has undertaken only a limited funding obligation for

-9-

WIPR.  It will pay the difference between WIPR's revenues and the resources needed to implement WIPR's work plan.  It has not, however, committed itself to provide all of WIPR's budget, and has not promised to cover unforeseen expenses that WIPR may incur.

We turn finally to the practical reality of WIPR's funding situation.  "If the [Commonwealth] substantially funds [WIPR], those funds would be the probable source to satisfy any judgment against [WIPR]," and therefore the public fisc would be jeopardized by an adverse judgment.  Fresenius, 322 F.3d at 73.

WIPR asserts that its "entire budget comes from the Commonwealth of Puerto Rico General Fund."  If true, this could be a significant (although not necessarily dispositive) fact.  See Mt. Healthy Sch. Bd. of Educ. v. Doyle, 429 U.S. 274, 280 (1977) (concluding that a public school district was not an arm of the state even though it received "a significant amount of money from the State").  In any event, WIPR has offered no materials substantiating its assertion and, as mentioned above, it has the burden of proof.  See Fresenius, 322 F.3d at 70.

In sum, WIPR's enabling act does not unequivocally indicate that the Commonwealth structured WIPR to share its sovereignty, and there is no indication that the Commonwealth has bound itself to pay WIPR's debts. Accordingly, the district court correctly denied WIPR's motion to dismiss on Eleventh Amendment grounds.

**Affirmed**.